No. 41.—JOHN W. BURCH and others, plaintiffs in error, *vs.* JOHN C. BURCH, ex'r, &c. defendant in error.

[1.] The executor of an only surviving executor, is the representative of the original estate, notwithstanding a portion of the will could not, by any possibility, be executed until the death of the original executor.

[2.] Where the testator directs a sale of his whole estate, and the provisions of the will show that he contemplated such sale to be made by his executor, the Ordinary should not refuse to grant letters testamentary, because a portion of the legatees suggest, by *caveat*, that they desire to take the estate in kind, dispensing with the sale.

Caveat on appeal, in Elbert Superior Court. Tried before Judge T. W. THOMAS, at September Term, 1854.

The questions in this case arose upon the application of John C. Burch, as the executor of Mrs. Elizabeth Burch, for letters testamentary upon the estate of William S. Burch, deceased. To this application John W. Burch and others, a portion of the legatees under the will, entered a *caveat* upon the grounds:

1st. That John C. Burch, as executor of Mrs. Burch, was

not entitled to the letters upon the estate of William S. Burch.

2d. That the will of William S. Burch had been fully executed, and there was no necessity for a representative to said estate.

The following are the wills of William S. Burch and Elizabeth Burch:

In the name of God, amen!

I, William S. Burch, of the State of Georgia and County of Elbert, being weak and infirm in body, but of sound mind, memory and understanding, do make and publish this my last will and testament, in manner and form following, to-wit:

First. I recommend myself to God the giver and Creator of all good, sincerely thanking him for all blessings, civil and religious, conferred upon me during my existence in this changeable and uncertain life.

Item. My will is, that all my just debts be paid.

Item. I lend to my beloved wife, Elizabeth, the whole of my estate, both real and personal, during her natural life or widowhood; but if she chooses to marry, then and in that case my will is, that the whole of my estate be taken out of the hands of my said wife, Elizabeth, by my executors, which I shall hereafter name, and be equally divided by appraisement, into three equal shares, share and share alike, and that my said wife Elizabeth take her choice of one share, or one third part of my estate so divided as aforesaid, which share or the one third of my estate so divided as aforesaid, I lend to my said wife Elizabeth after her second marriage, during her natural life; and that the share or one third part of my estate so lent my said wife Elizabeth, be under the management, direction and control of my said executors, for the support of my said wife Elizabeth, after her second marriage, so long as she shall live; and at her death, that the said share or one third part of my estate, so lent my said wife Elizabeth, after her second marriage, under the directions of my executors, to be sold and the monies arising from said

sale to be put into four equal shares, share and share alike; one share or one fourth part of the said monies, I give and bequeath to be equally divided betwixt the whole of the children of Sarah Harden, wife of Henry Harden, she, the same Sarah being sister to my said wife Elizabeth, and is to them, the said children, share and share alike, forever; one other share or one fourth part of said monies I give and bequeath to be equally divided betwixt the whole of the children of Polly Wilbourn, wife of Thomas Wilbourn, she, the said Polly being sister to my said wife Elizabeth, and is to them the said children, share and share alike, forever; one other share, or one fourth part of said monies, I give and bequeath, to be equally divided betwixt the whole of the children of Rebecca Upshaw, wife of John Upshaw, Junior, she, the said Rebecca being sister to my said wife Elizabeth, and is to them, the said children, share and share alike, forever; the other share, or one fourth part of said monies, I give to be equally divided betwixt Mary Ann Cook and William T. O. Cook, heirs of William T. Cook, deceased, he, the said William, being brother to my said wife Elizabeth, and is to them the said Mary Ann and William T. O. Cook, share and share alike, forever.

Item. My will is, that if my said wife Elizabeth should marry, then and in that case, I lend to my sister Betty Cook, one other share or third part of my estate, so divided by appraisement as aforesaid, during her natural life, for her support, which share or third part of my estate, so lent to my said sister Betty, be under the management, direction and control of my executors, for the support of my said sister Betty, so long as she shall live.

Item. If my said wife Elizabeth should marry, then and in that case, my will is, that the other share or one third part of my estate, so divided by appraisement as aforesaid, be so sold, and the monies arising from the said sale be equally divided betwixt my brothers and sisters (to-wit:) Thomas Burch, Benjamin Burch, Maza Burch, John Burch, Cheadle Burch, Polly Johnson, Jenney Divine, Hannah C. Purkins

and Sarah Kesee, and is to them, my said brothers and sisters, share and share alike forever; but if either of my said brothers or sisters should decease, leaving no child or children, then and in that case my will is, that their part of said legacy be equally divided betwixt the whole of my brothers and sisters above named, and is to each of them forever.

Item. And in case that my said wife, Elizabeth, should not marry, then and in that case my will is, at her death, the whole of my estate, both real and personal, be sold and the monies arising from the same to be put into three equal shares, share and share alike. One third part of the monies arising from the sale of the whole of my estate, I give to the children of Sarah Hardin, Polly Wilburn, Rebecca Upshaw and the two heirs of William T. Cook, as above mentioned; but if either of the above named sisters to my said wife, Elizabeth, should die, having no child or children, then and in that case, for their part of said legacy to be equally divided betwixt the surviving children of the above named sisters to my said wife Elizabeth; and if either of the above named heirs of William T. Cook should die, leaving no child or children, for the other one to receive his legacy; and if both of the said heirs of the said William T. Cook should die, leaving no child or children, then and in that case, for their legacy to be equally divided betwixt the surviving children of the above named sisters of my said wife Elizabeth.

Item. One other share or one third part of the monies so arising from the sale of the whole of my estate, I lend to my sister, Betty Cook, during her natural life, for her support; but the said share, or one third part of my estate so lent, be under the management, direction and control of my said executors, for the support of my said sister Betty, so long as she shall live.

Item. The other share, or one third part of the monies so arising from the sale of the whole of my estate, I give and bequeath, to be equally divided betwixt the whole of my above

named brothers and sisters, in manner as above mentioned, and is to each of them forever.

Item. At the death of my sister, Betty Cook, my will is, that the share or one third part of the monies arising from the sale of the whole of my estate, so lent her under the management, direction and control of my said executors, I give and bequeath to be equally divided betwixt the whole of my above named brothers and sisters, in manner as above mentioned, and is to each of them forever.

Lastly. I appoint my well beloved wife, Elizabeth, executrix, and my trusty friend, John Upshaw, Junior, and William Woods, executors of this my last will and testament, utterly revoking all will or wills heretofore made by me.

In testimony whereof, I do hereunto set my hand and seal, this 15th day of May, in the year of our Lord One Thousand Eight Hundred and Seventeen. Signed, sealed and delivered by the testator, as his last will and testament.

WILLIAM S. BURCH, [SEAL.]

In presence of
JOB WESTERN,
BAILEY M. WOODS,
WILLIAM WOODS.

GEORGIA, ELBERT COUNTY:

In the name of God, amen : I, Elizabeth Burch, of said County and State, being of sound mind, but feeble in body; and having long ago passed the period of life allotted to the human race, do make and publish this to be my last will and testament, hereby revoking all others.

Item 1st. I desire all my just debts to be paid without delay, if I should leave any unpaid at the time of my death.

Item 2d. I give and bequeath unto my neice, Mary Ann Burch, widow of Benjamin Burch, and her three children, to be equally divided between them, share and share alike, all the property, real and personal, debts, dues and demands, and all other property, of every kind whatever, which I may die possessed of, or have any right, title or claim to at my death, as

my said neice, Mary Ann Burch, has been a faithful companion and friend to me for many years; and I feel that I shall never be able to repay her for her increasing kindness, care and attention to me in my old age.

Item 3d. I nominate and appoint William B. Bowen and John C. Burch, to be executors of this my last will and testament, with all the rights, powers and privileges which my executors may have or lawfully claim.

In testimony whereof, I have hereunto set my hand and seal, this 8th day of February, in the year 1853.

her<br>
ELIZABETH ✕ BURCH.<br>
mark.

Signed, sealed and published as her last will and testament, in our presence; and signed by us as witnesses, in presence of testatrix and in the presence of each other, the day and date of said will.

> THOMAS W. THOMAS,
> ASA CHANDLER,
> DANIEL M. CARLTON.

GEORGIA, ELBERT COUNTY:

I, Elizabeth Burch of said County and State, being of sound mind, but feeble in body, do make and publish this as a codicil to the foregoing will, hereby ratifying and confirming the aforesaid foregoing will, except wherein the same is altered by this codicil.

Item 1st. In addition to the property bequeathed to my neice, Mary Ann Burch, widow of Benjamin Burch, in the foregoing will, I give to her my carriage, carriage horses and harness, over and above her equal share.

Item 2d. Whereas, in said foregoing will, William B. Bowen is named as one of my executors, and whereas he has removed out of the State of Georgia, I hereby nominate and appoint my other named executor, John C. Burch, to be sole executor of my said last will and this codicil, with all the rights, powers, privileges and interests into and over my es-

tate, and into and over the estate of my last husband, William S. Burch, which my executors may lawfully have or claim.

In testimony whereof, I have hereunto set my hand and seal, this 21st of June, 1855.

her<br>
ELIZABETH ☒ BURCH.<br>
mark.

Signed, sealed and published by the testatrix, in our presence, and signed by us as witnesses, in the presence of the testatrix and in the presence of each other, the day of the date of said will.        THOMAS W. THOMAS,

his<br>
HENRY ☒ ADAMS,<br>
mark.<br>
ASA CHANDLER.

The following were the facts agreed on:

It was admitted by John W. Burch and others, defendants in the above cause, that Elizabeth Burch, the executrix of said will of William S. Burch, survived both the executors of said will of William S. Burch, and that the records of the Court of Ordinary contained no evidence of any other returns being made by the executors of the will of the said William S. Burch, after the probate of the will, than an inventory of said estate, returned at the May Term of the said Court of Ordinary, 1822, and one made by William Woods, of the payment of debts of said estate, made to the November Term of said Court of Ordinary, 1823; that Upshaw, one of the executors of Wm. S. Burch, died before the testator, Wm. S. Burch, and that Elizabeth Burch and William Woods qualified as executors of said estate.

Also, on the trial of said cause, it was admitted by John C. Burch, the applicant in said cause, that the executors of William S. Burch's will, including Elizabeth Burch, executrix, proved the will of said William S. Burch, in the Court of Ordinary in said County of Elbert, and that it was admitted to record at the January Term of the Court of Ordinary

of said county, 1822, and that said executors returned an inventory of the estate of William S. Burch, at the May Term of said Court of Ordinary thereafter; and that William Woods, one of the executors of said will, made a return to the November Term, 1823, of said Court of Ordinary, of debts of said estate, paid by him as such executor; that said Elizabeth Burch remained in possession of the estate of the said William S. Burch, with the consent of the executors, from the death of the testator until her own death, and that she died on the 1st day of July, 1855.

The cause closed. Counsel for John W. Burch and others, defendants, asked the Court, in writing, to charge the Jury, that if they believed that Elizabeth Burch was permitted, by the executors, to possess and enjoy the estate of William S. Burch during her lifetime, that such possession and enjoyment of the property by her, is evidence of the assent of the executors to her receiving said estate in compliance with the will of said William S. and in execution thereof; and that if they believe she received said estate into her possession and enjoyed it during her life, with the consent of the executors, that such consent operated in behalf of those who, by the will, take after her death, so as to vest the title to the estate, after her death, in them, and leaves no ground, in law, for the granting of the application of said John C. Burch, now before them, and they should find against him. The Court refused so to charge, but on the contrary, charged the Jury as follows:

" Gentlemen of the Jury: In *Blackstone's Commentaries*, I find this principle laid down: ' the interest vested in the executors by the will of the deceased, may be continued and kept alive by the will of the same executor, so that the executor of A is, to all intents and purposes, the executor and representative of A himself; but the executor of A's administrator or the administrator of A's executor is not the representative of A; for the power of an executor is founded upon the special confidence and actual appointment of the

deceased; and such executor is therefore allowed to transmit that power to another in whom he has equal confidence; but the administrator of A is merely the office of the Ordinary, prescribed to him by Act of Parliament, in whom the deceased has reposed no trust at all; and therefore, on the death of that officer, it results back to the Ordinary to appoint another.' No new light has been shed upon this case, which causes me to doubt that these principles apply to and control the issue before you. If you believe that Mrs. Elizabeth Burch, at the time of making her will and codicil, was the sole surviving qualified executrix of Wm. S. Burch, deceased, and that she appointed John C. Burch, the applicant, her sole executor, then he is entitled, by law, to administer and manage as executor of the estate of Wm. S. Burch; also the express bequest to him of such right and, power, in the will and codicil of Elizabeth Burch, was no more efficacious to vest the same in him than his simple appointment as executor would have been.

"I have been requested by defendant's Counsel to charge the Jury, that if they believe that Elizabeth Burch was permitted, by the executors, to possess and enjoy the estate of Wm. S. Burch during her lifetime, that such possession and enjoyment of the property by her, is evidence of the assent of the executors to her receiving said estate, in compliance with the will of the said William S. and in execution thereof. My response to this request is, that it is good law in a case to which it applies, but it has no application to the issue you are to try. The question for you, is not whether the will of Wm. S. Burch has been rightly executed in behalf of Elizabeth Burch, who, it seems, was entitled to a life estate in the whole, but who is entitled to execute it in behalf of the remainder-men, who take after her death.

"The request made by defendant's Counsel, proceeds as follows: and that if they (the Jury) believe she (Elizabeth Burch,) received said estate into her possession and enjoyed it during her life, with the consent of the executors, that such consent operated in behalf of those who, by the will, take

after her death, so as to vest the title to the estate, after her death, in them, and leaves no ground, in law, for the granting of the application of said John C. Burch, now before them, and they should find against him. My response to this is, I decline to give it to you in charge; and on the contrary, charge you it is not the law of this case."

Exceptions were filed to the charge as given, and the refusal to charge.

VanDuzer; Wellborn, for plaintiff in error.

T. R. R. Cobb, for defendant in error.

The Court not being unanimous, delivered their opinions. *seriatim.*

*By the Court.*—Lumpkin, J. delivering the opinion.

But two questions present themselves to our consideration upon this record, and I shall consider them in the order in which they were argued by Counsel.

[1.] The first is, whether the defendant in error, John C. Burch, by virtue of his appointment and qualification as executor of the last will and testament of Wm. Elizabeth Burch, became entitled to represent the estate of Mrs. S. Burch, deceased, of which Mrs. Elizabeth Burch was the sole surviving executrix, at the time of her death? The general principle was not denied by Counsel for plaintiff in error, but this case was sought to be made an exception, by reason of the fact, that if anything is to be done by the representative of William S. Burch's estate, it is solely to make the sale and distribution which, by the terms of the will itself, were not to be made until the death of Mrs. Burch; and consequently, could not, by any possibility, have been made by her as executrix. The argument is, that her executor cannot be subrogated to rights which she, herself, did not have. We have

not been able to arrive at this conclusion. The reason of the rule is thus given by *Blackstone*: "For the power of an executor is founded upon the *special confidence* and actual appointment of the deceased; and such executor is, therefore, *allowed to transmit that power to another, in whom he has equal confidence.*" This reason applies with as much force to the case at bar as to any ordinary case. Moreover, this rule has been a settled rule of the Courts for more than five centuries, as appears by a Statute passed in 25 *Ed. III.* (*A. D.* 1352,) regulating the duties of such executors. (See 9 *Petersdorff, Abr.* 301, *note* 1.) Such cases as the present must have frequently occurred, and yet, we find no such exception made, and nothing analagous thereto, from which to deduce it. (See *Wentworth's Office of Ex'rs*, 259; *Godolphin's Orphan's legacy, Part II. Ch. T.*; 4 *Burn's Eccl. Law*, 224; *Wankford vs. Wankford*, 1 *Salkeld*, 309; *Williams on Ex'rs, Bk. III. Ch. T, p.* 207.)

[2.] The other objection was more urgently pressed by the able Counsel for plaintiffs in error; and that is, that by the assent of the executors to the life interest of Mrs. Burch, under her husband's will, all the title passed out of the estate; and hence, that the will was fully executed, and there remains nothing for an executor to do. Waiving the point, whether this is a proper objection, if true, to the present application, as both parties have expressed a desire for the opinion of this Court upon this question, we shall proceed to examine the will, and see whether there does remain any portion of it unexecuted. The rule that the assent of an executor to the life estate, enures to the benefit of a vested remainder-man, has been frequently recognized by this Court; and in *Foster vs. McGinnis*, (4 *Ga.* 377,) it is very strongly intimated, that the mere fact of a sale being ordered for the purpose of a division, not only will not keep the remainder from vesting, but, in a proper case, the remainder-men, themselves, might make the sale and the division. But is this such a case? Were the remainders vested at the death of Wm. S. Burch? For if any one of the several beneficiaries took a contingent remain-

der, then the law, which will not allow an estate ever to be in abeyance, must keep the title in the estate of Wm. S. Burch, until the contingency happens. We think it clear that those provisions in the will of William S. Burch, referring to the death of his wife's sisters, and also to the death of the heirs of William T. Cook, leaving no child or children, look to those contingencies as arising during the lifetime of his wife, and not during his own life. In fact, upon a careful review of this will, it is evident that the testator did not intend the title to any of his property to pass out of his estate during the lifetime of his wife, except in the event of her marriage. The care with which he distinguishes the use of the words "lend" and "give," shows that it was no unmeaning distinction with him. His testamentary idea clearly was, that his wife should have the usufruct of his estate, only the title remaining in his executors; and hence, he speaks of their resuming possession, of its being under their management, direction and control, after her second marriage, of their "lending" a portion to his sister Betty Cook, after his wife's death; still keeping the "management, direction and control," and finally providing for a sale and division. There can be no question that the testator intended this sale to be made by his executors; otherwise, how could they "lend" a portion of the proceeds of the sale to Betty Cook during her life, and keep the management, direction and control thereof? And if such was the intention of the testator, (upon which point I believe the Court are unanimous,) is the will *fully executed* until such sale is made?

But it is urged that the remainder-men, themselves, can make this sale. It is admitted by Counsel, that the remainder-men number at least one hundred; that they live in a half dozen different States of the Union—among others, Illinois and Texas; that they are of various ages, and some of them *femes covert;* that the interest of some of them would hardly pay their expenses from their homes to the site of this property. Only portion of them are parties to this *caveat,*

and some of them are possiby ignorant even of their having an interest, or of the death of the life-tenant.   Is this a case for an Ordinary to refuse to appint a representative to a large estate, consisting chiefly of negroes, and to permit them to remain without a controlling hand; and the estate to be was- ted upon the suggestion that all of these remainder-men, if they could possibly all be assembled, might make this sale and save the commissions of an executor ?   If titles can be made by them, all must join.   The absence, minority, cover- ture, of any one, might be a cloud upon it.   In the mean- while, who has the right to control and manage the estate ? If a trespass is committed, in whom does the right of action lay ?   Mark it, the proceeds of the sale, *not* the *property,* is given to these legatees—could they bring trover for one or more of the negroes ?   Could they sue in ejectment for the land ?   These interrogatories, it seems to me, must show the impracticability and the impolicy of such a proceeding.   But it is said that the proceeds of the sale being given to those leg- atees, they may elect to take the *corpus,* and thus dispense with a sale.   That this may be done in some cases, and that a case may be made in which a Court of Equity would order the delivery of the property in specie, is undoubted.   In a late case before this Court, (General Bledsoe's will,) we occu- pied and enforced this doctrine.   But this must be done by a Court of Equity, upon a proper case made.   How is the Or- dinary informed that the legatees have made such election ? How can he try the issue, whether this is a proper case for the enforcement of this rule ?   Suppose a portion of the leg- atees dissent, is the Ordinary to be governed by the majority, or shall he grant partial letters to administer and make sale of the portions belonging to the dissenting or non-assenting legatees ?   By whom is the division to be made between those legatees, electing to take in special, and those declining to elect ?   These and many other difficulties suggest themselves immediately, as insurmountable obstacles to the action of the Ordinary, refusing letters testamentary on this ground.   I express no opinion as to the power of a Court of Equity to·

meet them. Then, if at all, this election must be made, and it will be for that Court to decide whether the case is one which will authorize this relief.

---

STARNES, J. concurring.

I concur with the judgment delivered by Judge LUMPKIN in this case, and for the reasons which have been so ably assigned by him in his opinion.

---

BENNING, J. dissenting.

Ought the letters testamentary, on the estate of William S. Burch, to have been granted to John C. Burch?

They certainly ought not, if, at the time when they were granted, the legacies mentioned in the will had completely vested in the legatees. For in that case, the letters would give the grantee of them no power whatever; they could not give him power to touch any of the property bequeathed by the will, because the whole interest in that property would belong to others—the legatees. The most probable effect of granting them, would be to delude the person to whom they were granted, into the commission of a *tort*—the seizure of the property bequeathed in the will, under the idea that the letters would require of him such seizure.

At the time, then, when the letters were granted, had the legacies become completely vested in the legatees?

I say they had.

1. The remainders were never contingent.

This, I think, is, in all except one particular, completely settled by *McGinnis vs. Foster*, (4 *Ga. R.* 377.) The first head note of that case is as follows:

"Robert Foster made his will as follows: I give and bequeath unto my beloved wife, Celia Foster, all my estate, both real and personal, after my just debts and funeral expenses are paid, during her life or widowhood. In case my wife shall die or exchange her situation by marriage, it is my will, that a sale be made of all my property, both real and personal, and the proceeds be equally divided among my children. Celia Foster, a daughter of the testator, intermarried with Stephen W. McGinnis, after the death of her father, and died before her mother: *Held,* that the children of Robert Foster, who survived, took, at *his* death, a vested remainder in the estate." See, too, *Jordan vs. Thornton and others,* (7 *Ga.* 520.)

In this will, the word used by the testator in creating the life estates, is the word "lend." This is the particular to which the case of *McGinnis vs. Foster* does not extend.

But surely this word can have no other import in this will, than that of the word give. (*Bryan vs. Duncan,* 11 *Ga.* 67; *Booth vs. Terrell,* 16 *Ga.* 20.) How, indeed, can the word, when used in a will, ever have any other import? A loan is revocable. Is anything contained in a will—anything conveyed by a will, revocable after the testator's death, unless a special power of revocation is given by the will to somebody? Who is to revoke the loan when the lender is in the grave? The word cannot mean a loan.

It was argued that it appears to have been the testator's *intention* that there should be things done with the remainders by the executors, such as a sale and a division of the proceeds; but if we admit this to have been the intention, what does it amount to, if we have to admit, at the same time,

that these remainders were to vest, at the testator's death, in the remainder-men; i. e. were to belong, absolutely, to the remainder-men? In such a case, the intention is repugnant to the gift. The owner of property is not owner, if the property can be sold against his wishes.

And the expression of such an intention, must be considered a word of advice from the testator, to the objects of his bounty, not a word of law.

2. But if the remainders were ever contingent, it is most certain that they became vested on the termination of the life estate; i. e. on the death of Mrs. Burch. She had never married; they were, therefore, vested at the time when the letters testamentary were applied for; because that was after Mrs. Burch's death.

Whether, then, we consider the remainders as vested or as as contingent, the result is the same. That result is, that at the time when the letters were granted, the whole interest in all of the property conveyed by the will had become vested in legatees. If so, such letters could give the person to whom they were granted, no power at all over that property; and unless letters can confer on him to whom they are granted, some power over the testator's, they certainly ought not to be granted.

In addition to all this, I think that an executor would, in this case, do more harm than good, even in respect to the carrying out of the intention of the testator, as to a sale of the property and a division of the proceeds of sale. An executor's personal interest would be all against a speedy accomplishment of that object. As long as that object should remain unaccomplished, he would be handling the property and pocketing commissions. The attainment of these commissions, I have little doubt, myself, was the sole object of this application for letters. The estate is large; the claimants upon it many, and they persons widely separated from one another; so it was said in argument.

If there is to be a law suit among these claimants, the existence of an executor will not prevent it. If there is to be

none, it is not because an executor exists, that that is to be so.

All that could be said of him, it seems to me, would be, that he is in the way.

I will barely add, that Mrs. Burch, the life tenant, and one of the executors, had been executrix for some thirty years. Another of the executors qualified at the same time at which she did. She had been in the possession of the property for the whole time between her appointment and her death. It is to be presumed, therefore, that all of the testator's debts had been paid. If so, an administration was not needed for the payment of debts.

For these reasons, I dissent from the judgment of the Court rendered in this case.