McWILLIAMS, Appellant, vs. GOUGH, Executor, and others,. Respondents.'

*January 15—February 3, 1903.*

*Wills: Construction: Trusts and trustees: Title of trustees: Equitable conversion: Statute of uses and trusts: Cotenancy: Election of one beneficiary to take property in specie: Equity: Jurisdiction: Trustee's bond: Failure to give.*

1. A will devised the real estate of testatrix to G., as executor and trustee, with directions to support her step-son during his life, and provided that, on his death, the land should be sold and the proceeds divided among testatrix's children who should then be living, and the heirs of those who had deceased. *Held,* that the mandatory language of the will, requiring the real estate devised to the executor and trustee to be converted by him into money and distributed in that form to the ultimate beneficiaries, by the doctrine of equitable conversion, impressed on the real estate the character of personalty, and a trust in personal property was thereby created, which was not within the statute of uses and trusts.

2. In such case, the children of testatrix, some before and some after the death of the step-son, quit-claimed their interests in such real estate to plaintiff, who brought this action against the executor and trustee to quiet title in himself. *Held,* that the title to such real estate vested in fact, as well as in form, in the executor and trustee; that there was no way by which the title thereto could pass from the executor and trustee to the beneficiaries under the will by mere operation of law, and that such beneficiaries not possessing any title, their deeds vested no title in their grantee.

3 Such deeds only gave plaintiff an equitable right to stand for his grantors in the distribution of the trust fund under the terms of the will.

4. A will devised lands to executors and trustees to hold in trust for the support of a step-son, and provided on his death that such lands be sold, and the proceeds divided among several beneficiaries. *Held,* that each beneficiary was entitled to the full benefit of a complete execution of the trust as designed by the testatrix, and the election of one beneficiary to take land instead of money, cannot, as against a non-consenting beneficiary, reconvert what is in effect a bequest of personalty into realty.

McWilliams v. Gough, 116 Wis. 576.

5. A will provided that certain lands should be held in trust for the support of testatrix's step-son, and, on his death, should be sold and the proceeds paid to testatrix's five children, "share and share alike," provided, in case of the death of any of such children before the step-son, that the share coming to such deceased child should be paid to his heirs in equal parts. All of testatrix's children survived her, and one of them died before the step-son leaving children. *Held*, that the executor and trustee should divide the proceeds one-fifth to each of the children of testatrix living at the step-son's death, and one-fifth, share and share alike, to the children of the child who predeceased the step-son.

6. A trust never fails for want of a trustee. Where the office becomes vacant the trust continues, its execution only being interrupted, and judicial power, under equity jurisdiction, will compel and supervise the execution of the trust where there is no statute providing for the émergency.

7. Under sec. 4025, Stats. 1898, the giving of such bond "as the court may order" is made essential to the official character of a testamentary trustee to perform the trust. Under sec. 4026, any person appointed testamentary trustee, who shall refuse to give the bond required, or neglect to do so for twenty days after receiving notice that such bond is required, shall be deemed to have declined such trust, and under sec. 4027, any testamentary trustee appointed by the court, on failure of the trustee named in the will to qualify, shall be subject to the provisions of the statute regarding trustees appointed by will, and "the estate so given in trust shall vest in such trustee in like manner, to all intents and purposes, as the same vested in the original trustee named in such will." Testatrix devised her property to G. as executor and trustee, to be held in trust for the support of a step-son, and, on his death, to sell the same and divide the proceeds among her children. The executor and trustee qualified as executor and administered the estate, and final judgment was entered therein, assigning the estate to G. as trustee, but G. never gave bond as such trustee. *Held*, that the title to testatrix's estate vested in G. as executor and trustee by force of the will, regardless of his failure to qualify as such trustee, his right to execute the trust being postponed until he filed such bond as the county court should order.

APPEAL from a judgment of the circuit court for La Fayette county: GEO. CLEMENTSON, Circuit Judge. *Affirmed.*

Action to remove a cloud on title to real estate. The land

VOL. 116 — 37

covered by the mortgage was owned and possessed by Phœbe McDevitt when she died, May 6, 1886. By her will, duly admitted to probate, she devised the land to *Peter Gough* and *Francis Gough* as executors and trustees, with directions to rent the same to the best advantage in their discretion, and apply the excess of rents received over repairs and taxes and the expense of executing the trust, to the support and maintenance of her stepson, James McDevitt, during his life, and upon his death to sell the same, perfect title thereto in the purchaser by a proper conveyance, and pay the proceeds thereof, together with any unexpended rents and profits in their hands, to her five children, share and share alike, provided that in case of the death of any of such children before that of James McDevitt, the share that would go to such deceased child, if living, should be paid to his heirs at law in equal parts. The estate was properly settled and the land in form assigned to the trustees. No order was made requiring a bond. The trustees executed the trust under the will till the commencement of this action, except that they did not sell the land and divide the proceeds as directed. Soon after Mrs. McDevitt's death her stepson, James, was placed under the guardianship of *Daniel McWilliams,* with the understanding that he should have the use of the land and, as consideration therefor, pay the taxes thereon and support his ward. That agreement was carried out till McDevitt died, September 26, 1899. All the testatrix's children survived her, and three of them survived McDevitt. Margaret Mullady, the child whose death preceded McDevitt's, gave a quitclaim deed of the land to plaintiff July 3, 1889. She left surviving her five children, all of whom are named as defendants. Another of the children, Ann Fitzsimmons, gave plaintiff a quitclaim deed of the land before McDevitt's death; and a third, Elizabeth McWilliams, gave a like deed after such occurrence. Under the three deeds plaintiff claimed to own an undivided three-fifths interest in the land when this action

was commenced. Thereafter he obtained quitclaim deeds from the testatrix's other two children. Under all of the deeds, at the time of the trial, plaintiff claimed to be the owner in fee of the whole title to the land. All the children, supposing it was their right to take the property as land if they desired, and that the title was in them as to the remainder after the expiration of the life interest, elected to exercise that right, the deeds being made accordingly.

The contention of plaintiff upon the trial was that the title to the land vested immediately upon the death of the testatrix in the executors and trustees to hold the same for the life of James McDevitt, and that the remainder, at such time, vested in the five children of the testatrix. Defendants claimed that the whole legal title vested in the trustees, with no right whatever in the children of the testatrix, except to participate in the distribution of the property when converted into money under the terms and conditions of the trust. The court took the latter view and rendered judgment accordingly. Plaintiff appealed.

For the appellant there was a brief by *Orton & Osborn,* and oral argument by *P. A. Orton.*

For the respondents there was a brief by *E. F. Conley, Spensley & McIlhon* and *P. H. Conley,* and oral argument by *Calvert Spensley.*

MARSHALL, J. In support of appellant's position, the following five propositions are submitted for consideration: (1) The trust was invalid under the laws of this state except as to the period of McDevitt's life, during which time the trustees were directed to administer the trust by applying the net rents and profits of the land to his support. (2) The children of the testatrix at her death immediately took the full fee title to the land under the will, subject to a precedent estate in the trustees for the life of McDevitt, the interest of such children being a vested future estate under sec. 2037,

Stats. 1898, and alienable under sec. 2059, Id.    (3) At best
the only interest of the trustees in the land after the death of
McDevitt was a power in trust to sell the same and divide the
proceeds thereof, the legal title being in the testatrix's chil-
dren (secs. 2084, 2085, Id.), and the sale by the heirs who
would have been distributees in case of the sale of the land
under the power extinguished it.    (4) The death of Margaret
Mullady left no interest in the property, whether regarded
as land or the equivalent in money, which under the terms of
the will could go to her children, because the children's chil-
dren were to participate as beneficiaries in the distribution
by right of representation only in case of the parent being
alive at the time of the death of McDevitt and entitled to
take under the will, that being the proper construction of
the clause to the effect that, "If any of my children shall have
died before the death of said James McDevitt, then the share
which said deceased child would be entitled to *if living* shall
be paid," etc.    (5) The *Goughs* never having qualified as
trustees no title to the realty vested in them as such.

It does not seem necessary to discuss in detail the above-
stated propositions.    In the main they are plainly grounded
on a misconception of the will.    To what extent they are good
law as applied to a trust in real property need not be con-
sidered.    They all relate to trusts of that kind as affected by
the statute of uses and trusts.    Such statute deals solely with
such trusts.    *Dodge v. Williams,* 46 Wis. 70, 1 N. W. 92, 50
N. W. 1103; *Harrington v. Pier,* 105 Wis. 485, 82 N. W.
345; *Becker v. Chester,* 115 Wis. 90, 91 N. W. 87.    All
doubts as to that were long ago put at rest, as the cases cited
indicate.    The will here, while devising real property in
form, in effect bequeathed personal property only.    In man-
datory language it required the land devised to the executors
and trustees to be converted by them into money and distrib-
uted in that form to the ultimate beneficiaries.    That, by the
doctrine of equitable conversion, immediately upon the death

of the testatrix, impressed upon the land the character of personalty, and the law in respect to that class of property governs. The trust is plainly not within the statute of uses and trusts. It is a trust in personal property the same as if property of that kind in form as well as in legal effect was the subject thereof at its creation. No principle of law is better understood than that, or has been more fully discussed and applied by this court. Cases containing full discussions of the matter have been so recently decided here that we do not feel justified in treating the matter anew at this time. *Harrington v. Pier, supra; Becker v. Chester, supra.*

All questions as to the validity of the trust being out of the case because there is no law, statutory or otherwise, limiting the power of a person to create a trust in personal property, there is little left to be considered. Since the will must be considered as bequeathing personal property, if for no other reason, there can be no question but that the title to such property and the whole thereof vested in fact as well as in form in the executors and trustees. There was no way by which it could pass from them to the beneficiaries under the will or their assigns by mere operation of law, and no way by which they could convey the title or any part thereof. When the quitclaim deeds were made they did not possess any title. Therefore, obviously, their deeds did not vest title in appellant. At best such deeds only gave appellant an equitable right to stand for his grantors in the distribution of the trust fund under the terms of the will. 2 Jarman, Wills, 163.

As to the claim that the beneficiaries under the trust were entitled by election to take the property in specie, to take land instead of money, that they elected so to do, and that such election had the effect to convert what was before in legal effect personalty, if such were its character, into realty, it is a sufficient answer that the principle, though good law in a proper case, does not apply here. As counsel for respondents argue, where there are several undivided interests it is

necessary that all should join in the election to take property
in a form foreign to that intended, where such intended form
is required to be reached by turning land into money, in
order to impress upon it the foreign character. *Holloway v.
Radcliffe,* 23 Beav. 163; *Brown v. Brown,* 33 Beav. 399;
*Fletcher v. Ashburner,* 1 Brown's Ch. 497; *Biggs v. Peacock,*
22 Ch. Div. 284; *Burch v. Burch,* 19 Ga. 174; *De Vaughn v.
McLeory,* 82 Ga. 687, 10 S. E. 211; *Evans' App.* 63 Pa. St.
183, 186; *Baker v. Copenbarger,* 15 Ill. 103; 2 Jarman,
Wills, 191–2; Adam, Eq. (7th Am. ed.) 137; Pomeroy, Eq.
Jur. § 777. The text in Jarman on Wills states the law thus:

"It is not in the power of any one co-proprietor to change
the character of the property in regard even to his own share,
for as the act of the whole would be requisite to put an end to
the trust, nothing less will suffice to impress upon the prop-
erty a transmissible quality foreign to that which it had re-
ceived from the testator. Thus, if lands be devised to trus-
tees upon trust for sale and to pay the proceeds to A., B. and
C., in equal shares, and after the death of the testator and
before the sale is effected, A. grants a lease of his one-third,
or does any other act unequivocally dealing with it as real
estate, and then dies, his share will, nevertheless, it is con-
ceived, devolve to his personal representatives, as it would
still be the duty of the trustees to proceed to a sale on ac-
count of the other shares, the converting trust having been
created for the benefit of all."

It is plain that to permit one of several beneficiaries under
a trust in personalty to change property willed to be con-
verted from realty to personalty and distributed as such, so
as to take his share as real estate without the permission of
his co-owners, would violate the fundamental principle of
equitable conversion. The dominant idea in that is that prop-
erty in one form, by operation of law, effectuating the inten-
tion of the creator of the trust, is impressed with the char-
acter of property of a different species, into which it may be
turned, producing an equivalent in such form. That cannot
be accomplished, ordinarily, without the property being dealt

with as an entirety, if the distribution form required a conversion of realty into personalty; so, while equity permits a beneficiary or several beneficiaries representing the whole interest in a converting trust, to take the property in any form they may see fit, there being nothing inconsistent therewith in the scheme of the trust, one of several beneficiaries cannot prevent the actual conversion of realty into personalty, for the interests of nonassenting beneficiaries would be thereby prejudiced. Each beneficiary is entitled to the full benefit of a complete execution of the trust as designed by the settlor.

It is said by appellant's counsel that, granting the rule above laid down, all interests at the time the judgment here was rendered were merged in plaintiff, for the intent of the will is that children of a child shall take by representation only if such child is *in esse* and entitled to take at the termination of the beneficial interest of James McDevitt. That seems to violate the plain language of the will that the converted fund shall be partitioned between the five children of the testatrix, "share and share alike. And if any of my said children shall have died before the death of the said James McDevitt, then the share which said deceased child would be entitled to, if living, shall be paid to the heirs at law of such deceased child, in equal parts to each." The last clause modifies the first. The effect of both is a direction to the trustees to pay one-fifth of the fund to each of the children of the testatrix living at James McDevitt's death, and one-fifth, share and share alike, to the heirs at law of any such children not surviving said McDevitt. That seems to be too clear to warrant resort to rules for judicial construction to determine the testamentary idea in the will.

A further point is made that the *Goughs* never became trustees, because they did not qualify as such. If that were so, it would not help appellant. The trust would continue just the same. A trust never fails for want of a trustee. Where the office becomes vacant the trust continues, its execution only

being interrupted. Judicial power, under the equity juris-
diction, will fill the office in form or effect, and compel and
supervise the execution of the trust where there is no statute
to provide for the emergency. *Sawtelle v. Witham*, 94 Wis.
412, 69 N. W. 72; *Harrington v. Pier*, 105 Wis. 485, 82 N.
W. 345; *Bundy v. Bundy*, 38 N. Y. 410; Perry on Trusts,
§ 38; Story, Eq. Jur. §§ 99, 976. Respecting trusts created
by wills, the county court is expressly authorized by secs.
4025, 4026, 4027, Stats. 1898, to fill the office of trustee.

But we cannot hold that mere failure to give a bond ter-
minated entirely the official character of the *Goughs* as trus-
tees, or that the giving of a bond was necessary thereto. They
held the property as executors and trustees. They had certain
duties to perform in the latter capacity, and certain other
duties to perform in the former capacity, to some extent, all
at the same time. Their duties as trustees were to survive
their duties as executors. The statute (sec. 4025, Stats.
1898) obviously contemplates qualification of a testamentary
trustee before his office as such shall commence, imposing
upon him active duties. The formal assignment in this case
of the property to the *Goughs* as testamentary trustees did
not operate to change the title to the property. It was in them
before the order, and it remained in them after that, no trus-
tee having been appointed in their stead, notwithstanding
they failed to qualify. Obviously, therefore, before a testa-
mentary trustee has any active duties to perform, he must
accept the trust in the manner contemplated by the statute,
namely, by giving a bond as required by sec. 4025, Id. The
language thereof is mandatory to that effect. The only ele-
ment as to the bond left to the discretion of the court is the
amount thereof, the number and character of the sureties.
"Every trustee," etc., shall give a bond," etc., "in such sum
and with such sureties as the court may order, conditioned,"
etc., is the language of the statute. Evidently, the words, "as
the court may order," do not modify the mandatory require-

ment of a bond. That is made essential to the official character of the trustees to perform the trust. Sec. 4026 is to the effect that any person appointed trustee by any will, "who shall refuse to give the bond herein required, or neglect to do so for twenty days after receiving notice that such bond is required, shall be deemed to have declined such trust." The legislative idea there voiced is that a trustee shall have twenty days after notice that a bond is required of him as a condition precedent to his right to execute the trust, and that if he fails to perform such condition such right shall be terminated, leaving the court to fill the place by appointment. The next section provides for that. But the lapse of the right of such trustee to execute the trust where the property is willed directly to him does not devest him of the title. That is not suspended for an instant. It passes under the will according to the terms thereof to the trustee, but without authority to execute the trust except upon compliance with the conditions of the statute. That is clearly intended by sec. 4027, Id., which provides that the new trustee appointed by the court shall be subject to the provisions of the statute regarding the trustee appointed by will, and that "the estate so given in trust shall vest in such trustee in like manner, to all intents and purposes, as the same vested in the original trustee named in such will." Obviously, the estate is not given to a trustee appointed under such section merely by his receiving the appointment. It is given thereby and by the qualification of the trustee. Then, and not till then, the estate vests in him to the same extent as it vested in the testamentary trustee. Title vests in the latter under the will, where the devise or bequest is to him as trustee, and the will does not contemplate an interval between the death of the testator and the vesting of the title in such trustee,—not under the probate of the will or any mere order of the court, or under the statute requiring qualification of the trustee. It follows that the title to the property in question vested in the *Goughs* as

executors and trustees, it having been directly willed to them,. regardless of their failure to qualify as trustees; and, so far as appears in this case, the title is still in them. The situation has not changed. The trust to sell the property and distribute the proceeds is still to be executed.

What has been said disposes of all the questions raised on this appeal and requires affirmance of the judgment.

*By the Court.*—So ordered.