## In re Moran's Will.

*May 9—May 29, 1903.*

*"Vested" and "contingent" estates: "Vested" and "contingent" remainders: Statutes: Wills: Construction: Testamentary intent: Perpetuities: Presumptions: Time for division.*

1. The terms "vested estates" and "contingent estates" used in sec. 2037, Stats. 1898, have far different significations than the common-law terms "vested remainders" and "contingent remainders."

2. A vested remainder at the common law is one where there is "some person *in esse,* known and ascertained, who by the will or deed creating the estate is to take and enjoy the same upon the expiration of the existing particular estate, and whose right to such remainder no contingency can defeat."

3. A vested estate or remainder in the statutory sense is one where there is a person *in esse,* "who, should the particular estate now cease, would, *eo instanti et ipso facto,* have an immediate right to the possession," though whether he would ever take in fact might depend upon an uncertain event rendering the interest a contingent remainder, strictly so called, by the common-law rule.

4. While a vested remainder by the rules of the common law is not subject to be divested at all, not so a vested estate in the statutory sense. That may be divested upon condition subsequent in whatever way or manner the creator thereof in creating the same may provide or authorize. Sec. 2057, Stats. 1898.

5. While at common law an estate in remainder cannot be at the same time both vested and contingent, there is that seeming contradiction as to remainders under sec. 2037, Stats. 1898.

6. A person may be so conditioned that he would immediately take in remainder should the precedent estate presently cease, yet may not be so entitled at any future time. The element of certainty, by force of the statute, gives to the remainder the character of a vested estate for the purpose of the subject covered by the statutes. The element of uncertainty gives to the remainder, by same means, the character of a contingent estate for the same purpose. Neither situation, however, has anything whatever to do with the testamentary right except as hereinafter stated.

7. Whether an estate in remainder created by will is or is not vested in the common-law sense is controlled by the character of the estate actually created, as evidenced by the testamentary intention, not by any law, common or statute.

8. The testamentary intention in any case is to be determined from the will. Rules of construction aid in discovering that in proper cases, but do not control it or prevent its execution, except in the one case of a violation of the prohibition against unduly limiting the absolute power of alienation.

9. There is a rule for the construction of wills that the law favors the vesting of estates in a common-law sense and in a statutory sense as well, as regards the subject of perpetuities, but it is not for use except in solving uncertainties, and the same is true of all other rules for judicial construction as regards wills, the same as regards all other writings.

10. When there is a devise to one, remainder over direct to others, nothing appearing in the will to the contrary, the legal presumption is that the testator intended to create vested estates in remainder in a common-law sense; that is, estates indefeasible, descendible and alienable.

11. When an estate is by will carved out of a fee and the remainder is directed to be divided between the members of a class of persons after the expiration of such particular estate, the presumption of a testamentary intention that the estates in remainder shall vest upon the death of the testator is displaced by a presumption, nothing appearing in the will to the con-

trary, that the testator purposed to create contingent remainders in a common-law sense.

12. The rule last above stated applies regardless of the doctrine of equitable conversion, that not being important except as regards the statute on the subject of perpetuities.

13. Words of survivorship in a will, in respect to a devise of property in remainder to be divided between members of a class, are presumed, nothing appearing to the contrary, to refer to the time set for such division.

14. A bequest or devise in remainder for division and distribution at some point of time distant from the death of the testator, in the absence of an indicated purpose otherwise, is to be read as a direction to divide between those persons answering the calls of the class, in being at the time set for division, and that is so regardless of the doctrine of equitable conversion.

15. The devise and bequest of property in the case in hand to the testator's wife, to be divided after her death equally among the testator's children who may survive, "also my sister Julia to have an equal share . . . with my children if she survives the death of my wife," by the intermediate period of enjoyment and indefinite point of time set for division and distribution of the property subsequent to the death of the testator, evinces an intention to postpone the vesting in a common-law sense till the arrival of such time, and to limit the participants to those then in being, of the class designated. The words of survivorship, under the circumstances, evince the same purpose. Such is also the literal sense of the words, and, there being nothing in the law to the contrary, such sense must control.

16. The purpose of the testator being determined as indicated, and not offending against the statute on the subject of perpetuities, whatever the estate in remainder be called, it does not militate against such intention being executed.

17. The estates created, tested by the statutes, are of the nature following:

(a) Estates in expectancy because commencing in the future. Sec. 2033, Stats. 1898.

(b) Future estates, because limited to commence in possession at a future day. Sec. 2034, Id.

(c) Remainders, transferable as such (sec. 2035, Id.), subject to be defeated by any condition created or authorized at the time of and in creating the same (sec. 2057, Id.).

(d) Vested estates, because at every instant of time after their establishment by the taking effect of the will, persons

In re Moran's Will, 118 Wis. 177.

were *in esse* who could be pointed to as those who would take immediately should the particular estate be presently terminated.    Sec. 2037, Id.

(e) Contingent estates, because at no instant of time after the creation of the estates could any one or more of the remaindermen be said to be those who would finally come to the possession of the property.

(f) Estates subject to be defeated as to any one of the remaindermen by his decease prior to the termination of the particular estate, since the testator so provided at the time of the creation of the estates in the act of creating the same. Sec. 2057, Id.

[Syllabus by MARSHALL, J.]

CASSODAY, C. J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

Roger Moran died testate. In his will were these provisions:

"To my beloved wife, the land and appurtenances situated thereon, known and described as lot No. 7, and 33 acres of lot No. 6, east of the railroad lying in the Town of Granville, in the County of Milwaukee and State of Wisconsin, now possessed by me, during the term of her natural life and after her death to be divided equally among my children who may survive.

"I also wish my sister Julia Dolan to have an equal share of the above property with my children, if she survives the death of my wife."

Proceedings were duly had in the county court for the construction thereof, the question being whether the words of survivorship referred to the death of the testator or to the death of his wife. The decision was in favor of the former. The losing parties thereupon appealed to the circuit court, where they prevailed, judgment being rendered accordingly, from which this appeal is taken.

For the appellant there was a brief by *Nath. Pereles & Sons,* attorneys, and *G. D. Goff,* of counsel, and oral argument by *Mr. Goff.* They contended, *inter alia,* that the words

of survivorship in the will refer to the death of the wife, and not to the death of the testator. 29 Am. & Eng. Ency. of Law, 486–490; 1 Underhill, Wills, §§ 349, 350; 2 id. §§ 864, 865; *Coveny v. McLaughlin,* 148 Mass. 576; *Denny v. Kettell,* 135 Mass. 138; *Knowlton v. Sanderson,* 141 Mass. 323; *Morrill v. Phillips,* 142 Mass. 240; *Fargo v. Miller,* 150 Mass. 225; *Wood v. Bullard,* 151 Mass. 324; *Proctor v. Clark,* 154 Mass. 45; *Peck v. Carlton,* 154 Mass. 231; *Pollock v. Farnham,* 156 Mass. 388; *Bigelow v. Clap,* 166 Mass. 91; *Olney v. Hull,* 21 Pick. 311; *Hulburt v. Emerson,* 16 Mass. *241; *Bates v. Gillett,* 132 Ill. 287; Schouler, Wills, 614, note 2. The will created contingent and not vested remainders in such children as were living at his death. *Scott v. West,* 63 Wis. 529; *Stark v. Conde,* 100 Wis. 633; *Patton v. Ludington,* 103 Wis. 629; 2 Williams, Executors (2d Am. ed.) 538, note; Gray, Perpetuities, § 108; 4 Kent, Comm. 226, note. If the court should prefer to construe the words of *survivorship* as referring to the death of the testator and not the life tenant, there is no reason why the court cannot supply words or phrases which the testator meant to use but unintentionally omitted. *In re Donges's Estate,* 103 Wis. 497; *Schinz v. Schinz,* 90 Wis. 236; *Hellerman's Appeal,* 115 Pa. St. 120; *Daniel's Settlement Trusts,* 1 Ch. Div. 375; *Greenwood v. Greenwood,* 5 Ch. Div. 954; *Kellogg v. Mix,* 37 Conn. 243.

For the respondent *Pynn* there was a brief by *Toohey & Gilmore,* and for the respondents, widow and major children of James Moran, deceased, there was a brief by *John F. Burke,* and oral argument by *John Toohey.* They contended, *inter alia,* that it was the presumed intention of the testator that the beneficiary should have the actual enjoyment, rather than the technical ownership, of the property, and that therefore the presumption would be that the beneficiary's estate became vested at the death of the testator. *McArthur v. Scott,* 113 U. S. 340; *Baker v. Estate of McLeod,* 79 Wis.

534–541; 1 Underhill, Wills, §§ 349, 350; *Patton v. Ludington,* 103 Wis. 629, 650; *Hersee v. Simpson,* 154 N. Y. 496–502; *Burnham v. Burnham,* 79 Wis. 557; *Stark v. Coñde,* 100 Wis. 643; *Smith v. Smith,* 116 Wis. 570; *Estate of Hoffen,* 70 Wis. 524. The weight of authority sustains the contention that words of survivorship refer to the period of the testator's death, if no special intent appears upon the face of the will to the contrary. *Porter v. Porter,* 50 Mich. 456; *Moore v. Lyons,* 25 Wend. 119; *Estate of Brown,* 93 N. Y. 298; *Scott v. Guernsey,* 48 N. Y. 106; *Low v. Harmony,* 72 N. Y. 408; *Grimmer v. Friederich,* 164 Ill. 245; *Hansford v. Elliott,* 9 Leigh (Va.) 79; *Stone v. Lewis,* 84 Va. 474; *Drayton v. Drayton,* 1 Desaussure's Eq. 324; *Hoover v. Hoover,* 116 Ind. 498; 29 Am. & Eng. Ency. of Law, 489; note 1; *In re Albiston's Estate,* 117 Wis. 272.

For *Michael Moran,* minor, there was a separate brief by *William W. Wight,* guardian *ad litem.* He contended, *inter alia,* that unless a contrary intention clearly appears, wills operate from, and estates vest at, the death of the testator. *Toms v. Williams,* 41 Mich. 552; *Rood v. Hovey,* 50 Mich. 395; *Union Mut. Asso. v. Montgomery,* 70 Mich. 587. When a devise is made to take effect "after" the death of a preceding devisee, the intention is not to create a contingent estaté, but to indicate when the remainder shall take effect in possession—the commencement of the enjoyment of the estate. *Scott v. West,* 63 Wis. 529; *Livingston v. Greene,* 52 N. Y. 118, 123; *Embury v. Sheldon,* 68 N. Y. 227, 236; *Corse v. Chapman,* 153 N. Y. 466; *Hersee v. Simpson,* 154 N. Y. 496, 500. The law favors vested rather than contingent estates. *Doe dem. Long v. Prigg,* 8 Barn. & Cres. 231, 238; *Blanchard v. Blanchard,* 1 Allen, 223, 225; *Peck v. Carlton,* 154 Mass. 231, 233; *Porter v. Porter,* 50 Mich. 456, 461; *Heilman v. Heilman,* 129 Ind. 59; *Martin v. Kirby,* 11 Gratt. 67, 77; *Burnham v. Burnham,* 79 Wis. 557, 566; *Patton v. Ludington,* 103 Wis. 629, 650; *Grimmer v.*

*Friederich,* 164 Ill. 245, 249. Vested estates are favored because they are less likely than contingent estates to occasion intestacy, and intestacy is a condition which a testator does not intend and the law does not favor. *Martin v. Kirby,* 11 Gratt. 67, 73; *In re Donges's Estate,* 103 Wis. 497; *Davis v. Davis,* 109 Wis. 129, 132.

MARSHALL, J. This case presents for consideration a question not altogether new, but one that is of special interest in view of a material difference of opinion as to what constitutes a vested estate in the circumstances of the will in question, and the effect of sec. 2037, Stats. 1898, in respect thereto. From the views expressed independently in *In re Albiston's Estate,* 117 Wis. 272, 94 N. W. 169, and more fully stated during the discussion leading up to the decision now reached, it appears that possibly there is an unsolved question here as to whether, when an estate is vested under sec. 2037, Id., on the subject of limiting the right to put restraints upon the power of alienation, words of survivorship necessarily take effect as of the time of such vesting, with all the common-law incidents of vested estates. That was the cause of the difficulty observable in the decision in *In re Albiston's Estate,* we venture to say, and of absence of the same difficulty in *Smith v. Smith* 116 Wis. 570, 93 N. W. 452, the statute being there cited as important if not controlling, which, so far as possible, was withdrawn in the opinion of the court in the later case, though without unanimous concurrence. The will in the *Smith Case* did not deal with real estate, but the use there made of the statute, upon the theory that realty was involved, is now said among us to be applicable here, the view being that, a vested right to take, as regards the statute respecting restraints upon the power of alienation, gives effect, in point of fact as well as in point of right to the common-law incidents of vested estates; that is, that the right, by force of the statute, is accompanied pres-

ently by the indefeasible title in remainder, the mere enjoyment of the property being postponed till the termination of some particular precedent period of enjoyment carved out for another or others, so that in case the person to take in remainder dies before the time arrives for his enjoyment to commence his right will go to his heirs. If that be the case, surely *In re Albiston's Estate* was decided wrong, and the judgment in this case is right. If we have overstated the scope of the doctrine which we feel bound to consider, and it goes only to making the statutory vesting presumptive evidence of intention that the actual vesting shall accord therewith, not to be overcome other than by clear and unmistakable evidence to the contrary, the necessity to discuss the question would be the same.

We entertain the view that the term "vested" is used in sec. 2037 in a much broader and far different sense than that of the common law. The latter comprehends not a mere right to a class to take in the future, which may be defeated as to any member thereof upon his death happening before the arrival of the period for taking in fact, but a condition of the title *in præsenti,* in that it is presently vested in point of fact as well as right in the remainderman in being, the enjoyment only being postponed until the happening of some specified contingency. Under the statute a class of persons having mere possibilities in respect to being clothed with the title in fee, upon the termination, in their lifetime, of a precedent life estate, so long as they possess the entire right to take in remainder, enabling them, by presently joining with the life tenant, to convey the whole title, are possessed of vested interests in the eye of the law, though they have no title presently, strictly so called, at all, and a nonsurvivor to the time for enjoyment to commence will never acquire any such title.

Sec. 2037, Id., has nothing to do, necessarily, with the question of vesting in a common-law sense, in the sense material to the question of whether there is an actual taking of

the title in remainder upon the death of the testator under the same or similar circumstances to those of this case, that will preserve such title as to each of the remaindermen or in his line. The statute cited, with its accompanying provisions, deals mainly with limitations upon the right to absolutely suspend the power of alienation. For that purpose mere possessors of possibilities as to receiving a fee title are deemed by the fiction of the law, so to speak, to have present vested estates, if conditions be such that they may, by joining with the person or persons presently enjoying the property, convey it absolutely. It must be plain that where such is the case, in respect to a devise of an estate to be divided between members of a class who may survive until the expiration of a precedent life estate, no member of the class takes title, strictly speaking, during such precedent period. The right of each is dependent upon his surviving until the period for taking and distribution arrives. It is wholly contingent by the common law, though plainly vested by our statute, sec. 2037, and contingent as well.

If we are right in the foregoing, and the influence of a contrary theory has to any degree colored the treatment of any of our decided cases so that it may reasonably be believed that it has received indorsement as the law, the advisability of guarding against the danger that might come of it cannot be overestimated. We will say in passing that if there is a case in our books where a wrong conclusion was reached under the influence of such a contrary theory, we are unable to find it after a very thorough search therefor; while, on the other hand, we find it very distinctly recognized, in the opinion of *Ford v. Ford,* 70 Wis. 19, 33 N. W. 188, written by the present Chief Justice, quoting from the masterly analysis of the New York statutes on the subject of perpetuities, of which ours as to real estate is a copy, in *Coster v. Lorillard,* 14 Wend. 265, this single sentence referring to

the terms "contingent" and "vested" as regards future estates such as are referred to in our sec. 2037, Stats. 1898:

"These definitions of vested and contingent remainders are very different from the common-law definitions of these estates."

With the characteristics of a vested estate at common law clearly in mind, one may easily observe, upon reading the statute, that there was no purpose to embody therein in its entirety the common-law idea, nor any intention to deal, either as a rule of evidence or otherwise, with the meaning of testamentary or contractual words as regards when title is or is not vested, respecting anything but limitations upon the right to absolutely suspend the power of alienation and the other features found in the statutes, among them, that rendering expectant estates, whether contingent or vested, transferable and subject to be defeated by any act or means which the party creating the same may have prescribed. Secs. 2033, 2034, 2057, Stats. 1898.

Really, this matter seems to have been so definitely settled along the lines we have indicated, since the first full definitions of the statutory system of vested and contingent estates and limitations upon the right to suspend the power of alienation were given, found in the opinion of SAVAGE, C. J., to which we have referred, though the controversy was unsuccessfully renewed in respect thereto in New York, as we shall see, that we would not feel justified in this extended treatment if we were not face to face, as indicated, with a division of opinion in respect to the matter. In that situation, if we must adhere to the view that a vested estate under the statute is not a vested estate, necessarily, at common law, and that the statutory vesting does not militate against the possession of the right being divested and the same going over to some other person or persons under the circumstances of the case before us, it is due to the court that the fact should be stated, accompanied with reasons therefor, even if in the

course thereof we drift somewhat into a discussion of elementary principles.

"Vested remainders (or remainders executed, whereby a present interest passes to the party, though to be enjoyed *in futuro*) are where the estate is invariably fixed, to remain to a determinate person, after the particular estate is spent. As if A. be tenant for twenty years, remainder to B. in fee; here B.'s is a vested remainder, which nothing can defeat or set aside." 1 Cooley's Blackstone, Bk. 2, p. 169.

There is the essential of the common-law vested remainder told so plainly that one cannot well mistake it for a definition of vested remainders under secs. 2037 and 2038, Stats. 1898. After the adoption of the new system in New York, as is usual in all radical departures from the common law, many eminent judges did not take kindly thereto and struggled to retain the common-law characteristics of vested estates, notwithstanding the plain language of the statute inconsistent therewith. As late as 1869, some over forty years after the new system was adopted and more than thirty years after the decision in *Coster v. Lorillard,* 14 Wend. 265, so eminent a jurist as Judge Grover, in *Moore v. Littel,* 41 N. Y. 83, in a very vigorous opinion, concurred in by two of his associates, insisted that the vested future estate of the statute is in all respects the vested remainder at common law, and that a person not answering the calls of the common-law rule in that regard, yet having an estate in expectancy, has at best but a contingent interest. He argued that, otherwise, in case of a devise to A., remainder over to the children of the testator living at the death of A., such children would take both vested and contingent remainders, which would be an absurdity; that the only way to avoid confusion is to hold that in such a case, since no one can tell to whom the estate in remainder will finally go, it is contingent. Applying that to the case before us, viewing the will as a devise to the testator's wife, remainder over to the survivors of the class composed of his children and sister Julia, they all, under the

statute and from the common-law standpoint as well, took contingent remainders. On the other hand the court, speaking by WOODRUFF, J., held that the new system was not intended to be a statutory declaration of the common law, but an abrogation of it, in some respects at least, and a substitution in lieu thereof of a new system of vested estates which might be mere possibilities, or estates vested in one sense but contingent in another,—vested, but subject to be divested upon the happening of a condition subsequent, and not affected by common-law incidents of vested estates or by any other than those indicated in the statute. In the case there in hand there was a devise to A., who had children, remainder over to his heirs. The question was, did the children take interests in severalty during the lifetime of the father, which any one of them could convey, and if so would the conveyance pass an indefeasible interest or one subject to be defeated by the decease of the grantee during the lifetime of the father? In the affirmative it was contended that they took contingent interests by the rules of the common law, which were inalienable during the lifetime of the father and subject to be entirely defeated as to any one of them by his decease during continuance of the life estate; and that the statutory system was not intended to change such rule. In the negative it was contended that, if conditions exist in any case so that instantly upon the determination of the particular estate those who are to take in remainder will be known, the estate in remainder is not, strictly speaking, a contingent remainder at common law or under the statute, though it be not an indefeasible estate during the existence of the particular state. The learned judge who wrote the opinion recognized that there was some difference of opinion as to the true character of vested remainders at the common law, strictly so called. He thought, in a true sense a remainder may be vested under the common-law rules, and yet be subject to be divested upon the happening of a contingency. By that it will be seen that the definition of a contingent re-

mainder, by the elementary rule stated by the old writers, was enlarged somewhat in an effort to make the statutory and common-law rules harmonize. But during the discussion the learned judge thought best to discard "all the abstruse and refined discussions and disputes, as to what constitutes an estate, and what a mere possibility or expectation," by common-law principles, and to look to the plain language of the statute. In that he saw, rejecting technical expressions and phrases ordinarily employed, that "person" in the statute meant just what it expresses and no more; that is,

" 'When there is a person in being,' means when you can point to a human being, man, woman or child; and, 'who would have an immediate right to the possession of the lands upon the ceasing of the precedent estate,' means that if you can point to a man, woman or child who, if the life estate should now cease, would, *eo instanti et ipso facto,* have an immediate right of possession, then the remainder is vested, and, by necessary consequence, all the contingencies which may operate to defeat the right of possession are to operate, and only to operate as conditions subsequent."

That is to say, that a true vested remainder under the statute may be but a contingent remainder at common law. It may or may not be according as the "man, woman or child" you shall point to be entitled to take in remainder, as one "whose estate nothing can defeat or set aside," or one whose right "in remainder may never take effect," referring to the definition quoted from Blackstone, which harmonizes with all the older text-writers, and all the new as well, that have not fallen into confusion by failing to appreciate that the statutory definition is not a mere statutory enactment of common law, but one that largely cuts loose from the common law and erects a new system.

It is said in 4 Kent, Comm. (14th ed.) 202, speaking of common law estates:

"An estate is vested when there is an immediate right of present enjoyment, or a present fixed right of future enjoyment. It gives a legal or equitable seisin."

Speaking in close connection therewith it is said that under the New York statute there is a vested estate "when there is a person in being who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate or precedent estate." And again, at page 206, speaking of the distinguishing characteristics between vested and contingent remainders, it is said: "It is not the uncertainty of enjoyment in future, but the uncertainty of the right to that enjoyment." Applying that to the case in hand, we see that the right of enjoyment as to each remainderman, at the death of the testator, was dependent upon his surviving the life tenant.

In 2 Washb. Real. Prop. (6th ed.) § 1532, the same rules are stated in this way:

"The broad distinction between vested and contingent remainders is this: In the first, there is some person *in esse* known and ascertained, who, by the will or deed creating the estate, is to take and enjoy the estate upon the expiration of the existing particular estate, and whose right to such remainder no contingency can defeat. In the second, it depends upon the happening of a contingent event whether the estate limited as a remainder shall ever take effect at all."

One will easily apply that to the case in hand at once, seeing the contingency as to whether any particular remainderman will ever survive the life tenant.

The controversy we have indicated as existing in New York a generation after the new system had received judicial exposition in *Coster v. Lorillard,* exhibits the tenacity with which courts cling to common-law principles even after being displaced by a plain statute, as we have before indicated. When we observe that the controversy opened in 1832 and was then fully settled, so far as a single judicial decision can settle any question, and the doctrine there announced was fully indorsed in the great case of *Hawley v. James,* 16 Wend. 61, and yet observe that it was in vigorous activity in 1869, we need not marvel very much to find ourselves, a generation later, discussing the matter afresh.

We have striven to treat the subject in hand as briefly as possible and yet do justice to the court and the question, drawing only from the very fountain heads of the common law, and of statutory exposition applied to the new system in New York before it was adopted here. There is no end to what might be said if we were to endeavor to review decided cases in detail. Such a review would be interesting and would probably re-enforce very strongly what has been said, yet the principles finally declared would probably not be left as easily understood and impressed as firmly upon our judicial system as by omitting such discussion. However, we cannot well close the matter without referring more particularly to *Coster v. Lorillard* and *Hawley v. James,* because they were, in effect, incorporated into the New York statutes before we took them.

In *Coster v. Lorillard* the ultimate question at issue was whether, upon the facts, there had been an unlawful suspension of the absolute power of alienation. Justice SAVAGE at the outset, in discussing the statutes, referred to the notes of the New York revisers as indicating what their purpose was in framing the new system, namely, that it was, among other things, to "render a system simple, uniform and intelligible, which was various, complicated and abstruse," showing that they purposed more than a mere solution, by statute, of uncertainties in regard to the common law; that they contemplated radical changes in the essential elements of estates. These expressions, showing what the revisers intended, were quoted:

"To abolish all technical rules and distinctions, having no relations to the essential nature of property or the means of its beneficial enjoyment, to define with precision the limits within which the power of alienation may be suspended by the creation of contingent estates, and to reduce all expectant estates substantially to the same class, and apply to them the same rules, whether created by deed or devise."

"If a rule of law is just and wise in itself, apply it universally, so far as the reasons upon which it is founded ex-

tend, and in no instance permit it to be evaded; if it is irrational and fanciful, or the reasons upon which it is rested have become obsolete, abolish it at once."

So it will be seen that the revisers constructed the new system regardless of anything in the old one which, in their judgment, was "irrational and fanciful," or rested upon "obsolete reasons," or was "various, complicated and abstruse." They published, in effect, that they intended to make "great and radical changes throughout," quoting the language of Chief Justice SAVAGE. Did they accomplish their purpose as to vested and contingent estates? We may best answer that, for the purposes of this case, by further quoting from Chief Justice SAVAGE's opinion:

"These definitions of estates and contingent remainders, it will be seen, are very different from the common-law definitions of those estates. At the common law vested remainders are those by which a present interest passes to the party, though to be enjoyed in the future, and by which the estate is invariably fixed to remain to a determinate person after the particular estate is spent. By this definition the remainder in the present case is not embraced, for, by the devise, a present interest does not pass to any particular determinate person to whom it is to remain invariably fixed. . . . But by the statute definition this is a vested remainder, because there are persons in being who would have an immediate right to the possession upon the ceasing of the precedent estate, that is, there are persons in being who would take the possession of the estate were the precedent estate now to cease. . . . This remainder is also contingent, according to the statute definition."

"The learned antiquarian will pause and ponder over this vast pile of ruins; venerable at least for their antiquity, the erection of which occupied centuries, and put in requisition the labors of kings, ecclesiastics and laymen. Upon these ruins have been erected new edifices—a new system of uses and trusts, apparently plain and intelligible, and adapted to the real wants of society; but whether it is so in reality is yet to be proved."

In *Hawley v. James, Coster v. Lorillard* was fully approved, and the idea that a remainder can, in a true sense, be called other than contingent when the right of future enjoyment by the terms of the will is dependent upon survivorship, was repudiated in the most vigorous terms. In the opinion by Justice COWEN a distinction was drawn between vesting in respect to the mere right to take contingently, and in respect to vesting in interest. After indorsing, expressly, all that was said by SAVAGE, C. J., in the *Coster Case,* and reviewing many authorities, he said:

"With such a train of authorities, so clearly settling and recognizing the rule, . . . that survivorship is an uncertain event, and prevents the person who is to take, from being determinate and ascertained, and especially where there is an alternative as to the persons, depending on their being *in esse* at a given period of time, I cannot allow myself to entertain a moment's doubt that the remainder in this case is contingent, and that it cannot vest in interest until the persons who are to take are ascertained by the fact of their being in life at the expiration of the trust term."

We may rest from our labor, satisfied, it seems, that we have demonstrated that our statute, sec. 2037, is not a declaration of the common law at all, though common-law terms are found therein; that the fact that an estate in remainder is vested as regards limitations upon the right to suspend the absolute power of alienation does not suggest that it is vested absolutely in remainder and that the remainder is alienable according to the rules of the common law. It may be a contingent remainder only, if such be the expressed intention of the creator of the estate. When we are called upon to determine whether, as to an estate in remainder created by will, it vested absolutely at the death of the testator, we are not to be influenced by the statutory rules upon the subject of restraints upon the absolute power of alienation, but by the will itself. The statute, in effect, so declares. Sec. 2057, Stats. 1898. However, we are to keep in mind,

of course, where the intention of the testator is not plainly expressed, the familiar rules for solving ambiguities. Having determined the testamentary intention of the testator, the question of whether the effect of the will was to create mere contingent remainders will have been answered, though what we call such, if there were circumstances requiring us to test the will as regards whether it unduly suspended the absolute power of alienation, we might find, in that light, that we were dealing with vested estates. In short, in solving the question before us in this case, the statute, sec. 2037, does not necessarily cut any figure whatever. True, the estates in remainder, for the purposes of the statute, are unquestionably vested estates; but that does not militate at all against their being contingent by the rules of the common law so that the result of the decease of any one of the prospective takers in remainder would be to defeat his right, and cause the same to devolve upon the other members of his class, nor against the estate being subject to be divested, and go as indicated by the statutes as well.

Many principles here discussed were treated to some extent in *Becker v. Chester,* 115 Wis. 90, 91 N. W. 650. They would, had they been applied, have led to the result reached in *Smith v. Smith,* 116 Wis. 570, 93 N. W. 452, *McWilliams v. Gough,* 116 Wis. 576, 93 N. W. 550, and *In re Albiston's Estate,* 117 Wis. 272, 94 N. W. 169, and perhaps some other cases, regardless of the doctrine of equitable conversion.

Applying the foregoing to the will before us, viewing the sister of Roger Moran and his children as a class, if he intended that neither should take till the death of his wife, all became possessed, at his death, of contingent remainders by the common law, since there was not then, as to either, "a fixed right of future enjoyment." Testing their interests by the statute they were estates in expectancy, because limited to commence in possession at a future date. Sec. 2033, 2034, Stats. 1898. Such estates were also properly designated as re-

mainders, because dependent upon a precedent estate, and, whether vested or contingent, were transferable absolutely or subject to be defeated upon condition subsequent. Secs. 2035 and 2057, Id. The future estates or remainders were vested in character under sec. 2037, because there were persons designated who "upon the termination of the intermediate estate would *eo instanti et ipso facto* have an immediate right to the possession and enjoyment." Such estates were also contingent under sec. 2037, since at no time prior to the termination of the precedent estate could we point to any particular one or more of them, singling out the person or persons who would at all events ultimately become possessed of the property. Such remainders, from their creation, were subject to be defeated, "in any manner or by any act or means which the testator, at the creation of the estates, and in the creation thereof, provided or authorized." Sec. 2057, Id. It follows, necessarily, that in whatever way we view the will, we have the plain, simple duty to perform of discovering the intention of the testator and giving effect thereto, since there is nothing about the testament offending against any law. In determining the testamentary intention we must look only to the will. Rules of law may aid in discovering it, but they do not control or defeat it. That doctrine was very concisely expressed and directly applied in *Smith v. Smith,* 116 Wis. 570, 93 N. W. 452.

Turning now to the performance of the primary duty above indicated, it must be conceded that, whether the testator intended his children to take immediately upon his death, and that the enjoyment only should be postponed till the termination of the life estate, dependent upon whether the word "survive" was used with reference to his death or that of his wife. No statute or common-law rule controls that, as we have seen, or affects it, except by way of solving ambiguities. Precedents cannot help to any great degree. It may be admitted that, nothing appearing clearly to the contrary in the

language of a will, the presumption generally is that a bequest or devise takes effect, "in point of right upon the death of the testator" (*Scott v. West,* 63 Wis. 529, 24 N. W. 161, 25 N. W. 18), and that the law favors the vesting of estates, and that a construction of a will that will accomplish that result will be preferred to one which does not (*Patton v. Ludington,* 103 Wis. 629, 79 N. W. 1073). Many other helpful general rules might be referred to, to which we could resort in solving ambiguities. But at the outset we must have ambiguity before we can enter upon the field of interpretation or construction. Too often that fundamental principle is not given its proper significance, and ambiguities are created by construction when there are none in fact,—the meaning of the will being either plain and unmistakable, giving the words their ordinary signification, or the probabilities pointing so strongly in one direction that the paramount duty of the court to give effect to the purpose stands in the way of seeking for a justification to go in some other way.

Much is said in cases of this kind by way of argument as to circumstances sufficient to overcome the presumption as to vesting upon the death of the testator, as if there were always such a presumption, and as if in case of such vesting having taken place there could be no divesting, which is not the fact, as we have seen. Such rules prevail in the absence of anything in the will clearly indicating to the contrary. But where there is a precedent life estate, and the devise or bequest is not direct to those who are to take in remainder, leaving the period of enjoyment to commence only after the termination of a precedent life estate, but the bequest or devise is in the form of a direction or an expressed purpose that at the termination of the precedent estate the property shall be divided between certain persons specified, that circumstance is held to effectually displace the presumption as to immediate vesting, and create the presumption, nothing appearing clearly to the contrary, that the intention of the

testator was that the estate in remainder should not vest until the time for division and distribution should arrive.  *Smith v. Smith, supra; Patton v. Ludington, supra; Scott v. West, supra; In re Denton,* 137 N. Y. 428, 33 N. E. 482; *Fowler v. Ingersoll,* 127 N. Y. 472, 28 N. E. 471; *In re Baer,* 147 N. Y. 348, 41 N. E. 702; *Lyons v. Ostrander,* 167 N. Y. 135, 60 N. E. 334; *In re Brown,* 154 N. Y. 313, 48 N. E. 537; *Salisbury v. Slade,* 160 N. Y. 278, 54 N. E. 741; Underhill, Wills, § 346.

Much difficulty, it seems, often arises by being impressed so strongly with the general rule, as to the immediate vesting of estates, applicable where the devise or bequest is direct to the remainderman, as in *Patton v. Ludington,* that the rule, applicable where the devise or bequest is not direct in form, but rather in the form of a direction to divide and distribute after the termination of the precedent estate, and also the distinction between vesting at common law and under the statute, particularly that as to the former the estate may have all the characteristics of a contingent estate at common law, and that the statute so provides, are overlooked or not given their proper weight.  The second rule mentioned was applicable and given full effect in the recent cases of *In re Albiston's Estate,* 117 Wis. 272, 94 N. W. 169, and *McWilliams v. Gough,* 116 Wis. 576, 93 N. W. 550.  The distinction should always be made between a devise or bequest to a class subject to a precedent life estate, and a devise or bequest to one for life with a direction, express or in effect, that at the termination of the life estate the property shall be divided and distributed between the members of a class, regardless of whether the property dealt with be realty or personalty.  That important distinction will be found very thoroughly discussed in some of the New York cases we have cited.  By keeping it in mind, one may easily understand how the decision was arrived at in *"Matter of Brown"* and similar cases, that there was an immediate vesting upon the

death of the testator, and the decision was arrived at in *In re Denton,* and *Salisbury v. Slade,* that the vesting of the estate was postponed till the termination of the precedent life estate. At the same time one will avoid confusing *Patton v. Ludington* and similar cases with *In re Albiston's Estate* and similar cases. In the latter class of cases the words of survivorship, nothing appearing to the contrary, are presumed to refer to the happening of the event which will render necessary the ascertainment of the members of the class among whom the remainder of the estate is to be divided; while in the former class, such words, nothing appearing to the contrary, are presumed to refer to the death of the testator. So, in connection with the rules that the law favors the immediate vesting of the estate upon the death of the testator, and that it will be presumed that such was the intention of the testator, nothing appearing to the contrary, it should be understood that the necessity for the ascertainment of the members of a class among whom the estate is directed to or will be divided after the termination of the precedent estate, satisfies the proviso of the rule in respect to immediate vesting and destroys its force. A devise or bequest to a class is deemed to be one thing, and a devise to the survivors out of a class, or a direction, as in this case, that "after," etc., the property "to be divided equally among," etc., used in connection with express words of survivorship, closely connected with the event to which the word naturally refers, is plainly another thing. The term "vested" is here used with reference to its strict common-law signification, that is, the condition, as we have seen, where the right has become fixed where it is to remain absolutely, though the enjoyment thereof may be postponed to the termination of a particular precedent estate.

In *Lyons v. Ostrander,* 167 N. Y. 135, 60 N. E. 334, the will was treated as if it dealt with real estate, though it is true the doctrine of equitable conversion might well have

been applied. It does not seem, however, that the character of the law in that regard was considered material. It was said that the rule that words of survivorship in a will refer to the time of the testator's death does not apply to a case where a point of time is mentioned in the will other than the death of the testator, to which the contingency which shall call for a distribution and division of the estate can be referred, or where a life estate intervenes, or where the context of the will evinces an intent that the vesting of the estate in the remainderman shall be postponed. Here "vesting" was used in its common-law sense. So it was held that, although under the circumstances of that case a remainderman took a vested interest upon the death of the testator, speaking, evidently, of vesting in the statutory sense, it became divested by the predecease of the life beneficiary, and went over to the children of such deceased remainderman, not by force of the law, but because the will so directed.

Probably the rule that a devise or bequest to be divided between the members of a class at some point of time distant from that of the death of the testator, nothing appearing to the contrary, means among such persons as shall then be "*in esse*" is as well illustrated by *Matter of Baer,* 147 N. Y. 348, 41 N. E. 702, as could be by reference to a multitude of cases. It is sufficient to refer to the syllabus covering the subject, which is a concise deduction from the opinion of the court:

"Where final division and distribution is to be made among a class, the benefits of a will must be confined to those persons who come within the appropriate category at the date when the distribution or division is directed to be made."

In such a case the will, nothing appearing to indicate a contrary intent, is to be read, not as a devise directly to the members of the class, as explained in *Patton v. Ludington,* but as a devise to the survivors of the class, the term "survivors" pointing to the time set for the division to take place.

That is because the circumstances evidence such as the testamentary intention, which must always govern, as we have seen. We do not shape that with reference to any statute, but we find what that is, and then we give the appropriate name to the estates created. If we call them vested estates, where they fall within the rule stated, we mean vested in a statutory sense, and subject to be divested upon condition subsequent. We have a good illustration of that in vol. 4, Gould's edition of Kent, p. 203, which also illustrates the confusion that one is liable to fall into by not distinguishing common law from statutory vesting. The editor quotes Williams on Real Property to the effect that an estate always ready for distribution upon the termination of the precedent estate, answers to the calls of a vested remainder, saying, in effect, that while that accords with the New York statute, it is defective as a common-law definition, and gives this illustration, citing many authorities:

"If land is devised to the testator's wife for life and at her death to such of the testator's children as shall then be living," upon the will taking effect, there being a wife and children, "the persons who would take at any given instant, if the wife's estate should determine, then, are ascertained, and the remainder is always ready to come into possession at any moment. *Yet this is unquestionably a contingent remainder.* On the other hand a devise to testator's wife for life, remainder to B., C., D., E., and F., 'provided that if any of the last five named children die before my wife, then the property to be equally divided between the survivors,' gives a vested remainder, defeasible on condition subsequent."

While the illustration is valuable to support our conclusions here, we think the learned author failed to note the full scope of the distinction between the common-law and the statutory definitions under which, in both cases, the remainders were contingent by the common law, and both vested and contingent by the statute; vested, because at every instant of time after the taking effect of the will there would

be persons in being who would have the immediate right to the possession upon the termination of the precedent estate; contingent, because at no instant of time prior to the termination of the precedent estate could any one or more of the remaindermen be pointed to as the person or persons who would ultimately enjoy the property. The author recognizes that whether any member of the class will ultimately take is dependent upon the same contingency, viz., survivorship till the termination of the precedent estate. He then finds a reason for calling the remainder first one thing and then another to satisfy the intention of the testator, which does not concern the substance of things at all. Why such straining to use terms by their common-law meaning regardless of the utter uselessness thereof? The author finally comes down, as will be seen from a careful examination of his notes, to the idea that the testator's intention must govern regardless of what we call the estates which he creates. That was the conclusion in *Smith v. Smith,* 116 Wis. 570, where Mr. Justice WINSLOW, speaking for this court, said, in effect, that all minor rules and statutes are to promote rather than to defeat the one dominant principle that the intent of the testator must prevail. There the direction to divide and distribute at a future uncertain time was held to indicate that only those *in esse* at the instant of time set for the distribution were entitled to take, because, regardless of what we might name their remainders, they were after all but expectant estates and it was competent for the testator to give any direction to them he might see fit, under sec. 2057, Stats. 1898, so long as sec. 2038 was not violated. The decisions in *Scott v. West, Ford v. Ford,* and *Patton v. Ludington,* are in harmony with that view.

It is believed that if the learned trial judge had viewed the will before us in the light of the foregoing stated principles, a different result would have been reached than the one complained of. The will contains the elements of pre-

cedent life estate, remainder, which the testator directed to be equally divided among his children, the direction limited by the words, "who may survive," used in direct connection with the event upon which the division was made dependent, to wit, the death of his wife, and nothing appearing upon the face of the will indicating that the words of survivorship referred to any other event than that event. Going no further, it would seem that the members of the class among whom the testator intended his estate in remainder to be divided must remain uncertain till the death of the life tenant. If there could be any reasonable doubt about that from the language of the residuary clause referred to, there is the second paragraph added, which would remove that doubt. After the use of the language wholly disposing of the entire estate, the added words, in a separate paragraph, "I also wish my sister Julia Dolan to have an equal share of the above property with my children, if she survives the death of my wife," indicate very strongly this to have been the state of the testator's mind at the time of making such addition: either, in drafting the preceding paragraph by inadvertence his sister Julia was omitted; or after the testator's scheme, as at first formulated, was fully spread upon the paper, it occurred to him that his sister Julia should be provided for, whereupon, with the idea to place her in the class with his children, he added the words above quoted. It seems unmistakable, taking both paragraphs together, that the purpose of the testator was to put his children and his sister Julia into one class for distribution of his estate in remainder equally after the death of his wife.

*By the Court.*—The judgment appealed from is reversed and the cause remanded to the circuit court with directions to enter judgment affirming the judgment of the county court and for further proceedings according to law. The taxable costs in this court upon both sides will be a charge on the contingent interests of the parties to this litigation in the

property in controversy, but not paid out of the estate to the prejudice of the life tenant.

CASSODAY, C. J.  I do not wish to have the ground of my dissent in this case misunderstood.  The case of *Coster v. Lorillard,* 14 Wend. 265, commented upon at length in the opinion filed, and the case of *Hawley v. James,* 16 Wend. 61, therein referred to, were both cited in the opinion of this court in *Ford v. Ford,* 70. Wis. 19, 60, 61, 33 N. W. 188. Those cases were thus cited because the question under consideration was whether the devise of the homestead, in Wisconsin, in trust, by its terms, suspended the absolute power of alienation for a longer period than prescribed by the statutes in force in this state, and which had been copied from the statutes of New York—citing secs. 2034, 2037, 2038, 2039, 2086, 2089, and 2091.  Following those cases, it was held that such devise of the homestead was invalid, because during the period prescribed there was and could be "no person in being by whom an absolute fee in possession" could be conveyed.  *Ford v. Ford, supra; Coster v. Lorillard,* 14 Wend. 303, 307 (per SAVAGE, C. J.) ; *Hawley v. James,* 16 Wend. 121, 122 (per NELSON, C. J.).  What was said in those opinions about vested and contingent estates and remainders, had reference to the question of perpetuities.  But no such question has been raised by counsel in this case, and no such question is here involved.  The only question here for consideration is the construction to be given to the devise which gave, bequeathed, and disposed of the estate as follows: "To my beloved wife the land and appurtenances" described "during the term of her natural life, and after her death to be divided equally among my children who may survive." The language is plain, and free from ambiguity.  There is no question of equitable conversion involved.  The simple question here is whether, upon the death of the testator, the children took a vested estate in the lands so devised.  Four

years after the decision in *Hawley v. James, supra,* the same court held:

"In a devise of real estate to one for life, and from and after his death to three others, or to the survivors or survivor of them, their or his heirs and assigns, forever, the remaindermen take a vested interest at the death of the testator, and, consquently, though at the time of the decease of the tenant for life there be but one of the remaindermen surviving, he takes only one-third of the estate, and the heirs at law of the two others take the residue. The words of survivorship refer to the death of the testator, and not to the death of the tenant for life, unless from other parts of the will it be manifest that the intent of the testator was otherwise." *Moore v. Lyons,* 25 Wend. 119, reversing the judgment of the supreme court in the same case with NELSON, C. J., presiding.

That decision has frequently been sanctioned in New York. The reasoning of the dissenting opinion of Judge GROVER in *Moore v. Littel,* 41 N. Y. 66, 87–97, cited in the opinion on file in this case, gives support to the decision in this case. But the court in that case held:

"A grant to A. for life, and after his decease to his heirs and their assigns, forever, gives to the children of the latter a vested interest in the land, although liable to open and let in after-born children of A., and liable also (in respect of the interest of any child) to be wholly defeated by his death before his father. Such an interest, whether vested or contingent, is alienable during the life of A. (the tenant for life), and passed by deed or mortgage, subject only to open or be defeated in like manner as before."

To the same effect, *Griffin v. Shepard,* 124 N. Y. 70, 26 N. E. 339; *Campbell v. Stokes,* 142 N. Y. 23, 36 N. E. 811. Judge GROVER alone dissented from the last proposition quoted, and two other of the eight judges concurred in his dissent from the first proposition quoted. Speaking of that dissenting opinion, the same court, in a learned and dis-

criminating opinion, concurred in by all the judges, subsequently said:

"The court did not concur in the reasoning, or the conclusion to which it led. Followed steadily to its logical consequences, it would apparently take out of the operation of the statute a large class of future estates upon the ground that they are mere possibilities, and not estates at all. The collision at the bottom of that case was over the character of a contingent remainder limited to the heirs of a person then living. The majority of the court, founding their opinion upon the definitions of the Revised Statutes and their express authority, held that the children of John Jackson had, during his life, and notwithstanding the uncertainty of their ever living to be his heirs, an expectant estate, which could be aliened. The dissent went upon the ground that such children, during the life of the father, had no estate at all, but only the possibility of acquiring one, which, therefore, was not the subject of a conveyance." That case, as there said, "at least settled the question that such a contingent right as was devised to John Foley is within the definition of expectant estates, and governed by the provisions of the Revised Statutes. It is true that, to allow of title by descent, there must be something to descend; and what that is, in a case of contingent remainder, which may never vest either in interest or possession except a mere possibility of acquiring an estate, is a question which the mandate of the statute sufficiently answers, but which may also be answered on principle. John Foley had something more than a mere possibility of acquiring an estate. He had the fixed, absolute right to have the estate if the contingency occurred. That right was conferred by the will of the testator, and vested in him at the instant of the latter's death. The devisee held it as a vested right, but such a right as the contingent and uncertain character of the devise created; nevertheless a fixed and vested right, which the Revised Statutes recognize as an estate, placed in the category of expectant estates, and decree shall be descendible and which as we have already seen was descendible even at common law." *Hennessey v. Patterson,* 85 N. Y. 102, 103.

And so I think the logical consequences of the decision in this case are the same as that court so declared to be the logical consequences of Judge GROVER's dissenting opinion, and that is "that it takes out of the operation of the statute a large class of future estates upon the ground that they are mere possibilities, and not estates at all." To my mind, the language of the devise in this case is substantially the same as the devise in *Moore v. Lyons, supra,* and the grant in *Moore v. Littel, supra,* and should receive the same construction. So construed, the children had an interest capable of being conveyed by deed or mortgage during the life of the mother, subject only to open or be defeated, as mentioned. The decision of the court in *Moore v. Littel, supra,* has often been sanctioned in New York. The devise construed in *Livingston v. Greene,* 52 N. Y. 118, 123, was quite similar, and in that case PECKHAM, J., speaking for the whole court, said:

"The words 'after,' and 'upon the death of the wife,' and like words, do not make a contingency, but merely indicate when the remainder shall take effect in possession—the commencement of the enjoyment of the estate."

In that case the testator's children all survived him, but several of them died before the widow; and it was held "that the children took a vested remainder, not subject to be defeated by their death prior to that of the widow." To the same effect, *Embury v. Sheldon,* 68 N. Y. 227, 235, 236; *Kelso v. Lorillard,* 85 N. Y. 177; *In re Mahan,* 98 N. Y. 372, 376; *Byrnes v. Stillwell,* 103 N. Y. 453, 460–463, 9 N. E. 241. In *Kelly v. Kelly,* 61 N. Y. 47, the testator devised and bequeathed all his estate to his two children, and in case of the death of one the surviving child was to have the whole, and in case of the death of both the same was given to two nephews, with directions not to sell or mortgage until the youngest child should reach the age of twenty-one, and it was "held that the death referred to was one happening in the

lifetime of the testator; and- that, he having died leaving the two children him surviving, they took a fee, and the limitation over was of no effect." In *Van Axte v. Fisher,* 117 N. Y. 401, 22 N. E. 943, the testator gave his residuary estate to his executor, in trust with power to sell and invest the proceeds and provide for and properly maintain D., and the balance on the death of D. was thereby given to J., who died before D., intestate, leaving children; and it was held that upon the death of the testator, J. took a vested remainder, subject to the exercise of the power of sale, and that upon the death of J. his interest descended to his issue. Thus it has been held:

"The words 'from and after,' used in a testamentary gift of a remainder, following a life estate, do not afford sufficient ground in themselves for adjudging that the remainder is contingent, and not vested; and, unless their meaning is enlarged by the context, they are to be regarded as defining the time of enjoyment simply, and not of the vesting of title. The presumption is that a testator intends that his dispositions shall take effect in enjoyment or interest at the date of his death; and upon the happening of that event, unless the language of the will by fair construction makes his gifts contingent, they will be regarded as vested. Words of survivorship and gifts over on the death of the primary beneficiary are to be construed, unless a contrary intention appears, as relating to the death of the testator." *Nelson v. Russell,* 135 N. Y. 137, 140, 31 N. E. 1008.

The case at bar is quite similar to *Stokes v. Weston,* 142 N. Y. 433, 37 N. E. 515:—"The will of S. gave to his wife the use of all his property for life, the remainder to his three children—two sons, who were unmarried, and a daughter, who was married and had two children. The will then provided that in case of the death of the sons, or either of them, without issue then living, the share of the ones so dying should be divided equally between the two grandchildren. . . . Held, that the death referred to was that of a son

during the lifetime of the testator, and, as they both survived him, they, with their sister, took the entire estate, subject to the life estate of the widow."

It was there also held:

"The law favors equality among children in the distribution of estates, and in case of doubtful construction of the language of a will it selects that which leads to such a result. So, also, the law favors the vesting of estates, and, in case a will contains apt words to dispose of the testator's entire estate, that construction will be given to it."

So the case at bar is quite similar to *Hersee v. Simpson,* 154 N. Y. 496, 48 N. E. 890:—"The will of a testator, who left a wife and children surviving, devised a life estate in his real property to his wife, and provided that from and after her decease the property should be disposed of according to the statutes governing the descent of real property. Held, that the heirs of the testator upon his death took a vested remainder in his real estate."

In that case the court also held:

"A remainder is not to be considered as contingent in any case where, consistently with the intention of the testator, it may be construed as being vested. The words 'from and after,' in a testamentary gift of a remainder following a life estate, do not make the remainder contingent, and prevent its being construed as vested, where there is nothing else on the face of the will tending to show that the vesting of the remainder was postponed or intended to be postponed beyond the death of the testator."

I have thus quoted at length from New York cases, because certain cases from that state are cited in support of the decision in this case. But, in my judgment, the decision in this case is in conflict with the settled law in New York, as appears from cases cited, and numerous others which might be cited, and also numerous prior rulings of this court. *Scott v. West,* 63 Wis. 533, 563–573, 593–595, 24 N. W. 161, 25 N. W. 18; *Baker v. McLeod's Estate,* 79 Wis. 534, 541–545,

48 N. W. 657; *Burnham v. Burnham,* 79 Wis. 557, 566, 567, 48 N. W. 661; *Patton v. Ludington,* 103 Wis. 629, 646–650, 79 N. W. 1073; *Smith v. Smith,* 116 Wis. 570, 93 N. W. 452. It has the support, however, of *In re Albiston's Estate,* 117 Wis. 272, 94 N. W. 169, in which I dissented. Id. It is true that the devise quoted was followed by this clause: "I also wish my sister Julia Dolan to have an equal share of the above property with my children *if she survives the death of my wife."* But that did not prevent the estate from vesting in the children upon the death of the testator, subject to open and let in the sister Julia in case she should survive the death of the widow. This is in harmony with a number of the cases cited above, and many others which might be cited. *Moore v. Littel,* 41 N. Y. 83; *Griffin v. Shepard,* 124 N. Y. 70, 26 N. E. 339; *Campbell v. Stokes,* 142 N. Y. 23, 36 N. E. 811, and *Scott v. West,* 63 Wis. 529, 24 N. W. 161, 25 N. W. 18. As indicated in some of the cases cited, certain estates were vested under the New York statutes, from which ours were taken, which would not have been vested at common law. And yet, in my judgment, the estate in the case at bar was subject to the life estate and the conditions mentioned, not only vested in the children immediately upon the death of the testator, under the statutes, but also would have been so vested at common law. If not, then in whom is such estate vested in the case at bar? Certainly not in the tenant for life, the widow, for by the terms of the devise the estate which she took terminated on her death. There is no claim that the widow or any one else took the remainder of the estate in trust, and there is no ground for making any such a claim. Thus, we have, by virtue of the decision in this case, the anomaly of an estate in remainder without any remainderman and without any trustee to hold such title, which, it would seem, is to remain without an owner, in trust or otherwise, during the life of the widow. That is the question that confronted this court in

*Scott v. West, supra.* It was there held that upon the death of the testator the grandchildren then living took a vested remainder, subject to open and let in afterborn grandchildren, and to be divested by death without issue, notwithstanding the testator's daughters, as trustees, had the management of the estate during their lives and the life of the survivor of them. See pages 554, 555, 558, *et seq.,* 63 Wis., pages 165, 167, 24 N. W., and other pages cited above. To my mind it is very clear that upon the death of the testator the land in question became vested in the children, so that the same could be conveyed by them subject to the widow's life estate and the condition named.

The foregoing statement is sufficient to indicate the grounds upon which I dissent.