BENNER, imp., Appellant, vs. MAUER, Administrator with the will annexed, and another, Respondents.

*October 15—November 5, 1907.*

*Wills: Construction: Equitable conversion: "Put on interest:" "The interest of my property shall be paid annually:" "The principal shall go:" Ambiguity: Life estates: Rights of life tenants in income: Vesting of remainder: Absence of express bequest of income after termination of life estate: Guardians* ad litem: *Compensation.*

1. Testator, whose estate was largely comprised of farm lands, directed that after the payment of debts and funeral expenses "all" his property should be "put on interest" by some one appointed by the county judge of G. county; that "the interest" of his property should "be paid annually" to two sons "during their lives," and that after the sons' death "the principal" should "go to their living children, at the age of twenty-one." *Held*, that the testator's intention was that the one appointed by the court to administer the estate should convert the same into money, put the available funds out at interest, and act as trustee in the complete execution of the will.

2. In construing a will the words "put on interest," "the interest of my property shall be paid annually," "the principal shall go," relate, in their ordinary sense, to dealing with money, the value of the use of money, measured by interest, and securities dischargeable by the payment of money.

3. Judicial construction cannot properly commence except in the face of uncertainty of sense; some fair doubt as to which of two reasonable meanings, if there be such, was intended.

4. A will is not to be read in the light of rules for judicial construction merely because its meaning is challenged, and the challenge supported by reasoning on the assumption that such meaning is obscure; but if the will as a whole, in the light of the subjects dealt with, is plain, there is no legitimate room for judicial construction, and none should be attempted.

5. Testator by his will directed that all his property should be put on interest, and the interest paid annually to his two sons, B. and J., "during their lives, but none of the principal shall be paid to either one." *Held*, that the income should be equally divided annually between the two sons while they both live, and after the death of one that all the income should be paid to the other so long as he survives.

6. Testator by his will, after giving a life estate to two sons, provided that after their death "the principal shall go to their living children, at the age of twenty-one." *Held*, that the grandchildren's estate did not vest by an absolute title prior to the termination of the life estate, and the rule that, nothing appearing convincingly to the contrary, it is presumed that bequests take effect and vest absolutely in point of right at the death of the testator, was displaced by the rule that the bequests, being in the form of a direction to divide between and distribute to specified persons, vested in those *in esse* answering the description at the time appointed for division and distribution.

7. Testator by his will, after providing for the annual payment of "the interest" of his property to two sons, declared that after the death of his sons "the principal shall go to their living children, at the age of twenty-one." There was no express disposition of the interest after the termination of the life estates. The accumulation of the interest and postponement of time of payment to that of the principal was negatived by the express direction as to payment of the principal and silence as to payment of the income. Intention to leave the income as intestate property was negatived by the obvious scheme of testator to dispose of all his property. *Held*, that the testator's purpose

was to bequeath the principal to the grandchildren living at the termination of the life estates, share and share alike, payment to them, as to principal, to be made upon their severally arriving at the age of twenty-one years, and, as to income, annually for their use, and in case of the death of any child after the period of vesting and before the time of payment his share to go to his personal representatives instead of to the surviving grandchildren.

8. In an action to construe a will it was ordered that no costs be taxed in favor of an infant respondent, but under ch. 267, Laws of 1907—sec. 4041a, Stats.,—an allowance of $75 was made to her guardian *ad litem;* and no allowance was made to the guardian *ad litem* of other infants, because no claim had been presented in respect thereto with proof as to what would be reasonable.

APPEAL from a judgment of the circuit court for Grant county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed in part; reversed in part.*

Proceedings were duly commenced in the county court of Grant county, Wisconsin, for the construction of a will, of which the following is a copy, omitting the signature and attestation clause:

"I, John Benner, of the town of Liberty, county of Grant, state of Wisconsin, being of sound mind and memory, do hereby declare this to be my last will and testament.

"I. All my just debts and funeral expenses shall be fully paid.

"II. All my property shall be put on interest by some one appointed by the county judge of Grant county, Wis.

"III. The interest of my property shall be paid annually to my sons *Bert* and John during their lives, but none of the principal shall be paid to either one.

"IV. After the death of my sons the principal shall go to their living children, at the age of twenty-one."

The county court construed the will as follows:

"1. It was the intention of said testator that all his property shall be converted into money.

"2. It was the intention of said testator that said money

shall be put at interest by a trustee to be appointed by the county judge of Grant county, Wisconsin, as such judge.

"3. That the interest arising from such investment shall be paid by said trustee to the testator's two sons, *Bert* and John, during their lives.

"4. That said sons, so long as both shall live, shall take said income jointly and in equal parts, and that the survivor shall take the entire income so long as he shall live.

"5. That no part of the principal sum or corpus of said estate shall be paid to either of said sons.

"6. That upon the death of both sons, the corpus of the estate, or principal, shall immediately vest in the children, then living, of said sons, as joint tenants with right of survivorship.

"7. That as each of said joint tenants arrives at the age of twenty-one years, he shall be entitled to receive from said trustee his proportionate share of said principal.

"8. That pending the period between the death of said life tenants and the time when the child or children surviving them shall reach its or their majority, the interest derived from said principal sum shall be paid to the children or to their duly qualified guardians, in equal shares, for their use, support, and maintenance.

"9. That said will creates a valid trust in the person to be appointed by said county judge, to effectuate its provisions.

"10. That in order to carry out the scheme of said will, it is necessary that the administrator with the will annexed of the estate of said deceased shall sell all the personal and real estate of which the deceased died seized and convert the same into money."

Judgment was entered according to such construction.

Upon appeal duly taken to the circuit court for Grant county the judgment was affirmed.

For the appellant there was a brief by *Miner & Elver,* and oral argument by *F. M. Miner* and *E. T. Elver.*

For the respondent *Mauer* there was a brief by *Brown & Brennan,* and oral argument by *N. W. Brown.*

For the respondent *Edna Benner* the cause was submitted on the brief of *Geo. B. Clementson,* guardian *ad litem.*

MARSHALL, J.  A vigorous attack is made on the decision that the doctrine of equitable conversion applies to the will, giving all of the testator's property the character of personalty.  The decision is manifestly right if the testator expressly or by necessary implication directed his estate to be administered and distributed in the form of money. *Dodge v. Williams,* 46 Wis. 70, 1 N. W. 92, 50 N. W. 1103; *Ford v. Ford,* 70 Wis. 19, 33 N. W. 188; *Harrington v. Pier,* 105 Wis. 485, 82 N. W. 345; *Becker v. Chester,* 115 Wis. 90, 91 N. W. 87, 650.  The trial court probably came to the conclusion that such was the case; moreover, that the will could not be executed without treating the property as personalty, therefore that such express direction is reinforced by an implied one, and with that we quite agree.

The words "put on interest," "the interest of my property shall be paid annually," "the principal shall go," etc., have a plain, unmistakable meaning.  They all relate, in their ordinary sense, to dealing with money, the value of the use of money, measured by interest, and securities dischargeable by the payment of money.  The only way an estate could be put out at interest, within the ordinary meaning of words, would be to convert the same into interest-bearing securities.

It is not a legitimate answer to the foregoing to say that the words under consideration do not, necessarily, under all circumstances mean what their literal sense suggests, unaccompanied by some convincing reason that such was not intended.  The familiar rule that "words which are plain and in their literal sense lead to no inconsistent or absurd consequences must be presumed to have been used in their common and ordinary meaning, and such presumption must absolutely prevail," precludes ascribing to a written instrument a meaning out of the ordinary sense thereof, and renders all efforts to do so wholly illegitimate, in advance of ambiguity appearing.  Judicial construction cannot properly commence except in the face of uncertainty of sense;

some fair doubt as to which of two or more reasonable meanings, if there be such, was intended.

Far too often the salutary principles mentioned seem to be overlooked, especially in the treatment of wills, they being approached as if, as matter of course, they should be viewed in the light of rules for judicial construction varying the common, ordinary sense of words, and thus ambiguity is, at the outset, read out of instruments, instead of unavoidable uncertainty being solved by such rules. *In re Moran's Will,* 118 Wis. 177, 196, 96 N. W. 367. We may well repeat what was said in *Mitchell v. Mitchell,* 126 Wis. 47, 49, 105 N. W. 216, 217:

"A will is not to be read in the light of rules for judicial construction merely because its meaning is challenged, and the challenge supported by reasoning on the assumption that such meaning is obscure. Often obscurity claimed to exist in such an instrument is but the mere creation of the mind of the claimant, not one originating with the maker of the paper. The first duty in examining a will to discover its purpose is to proceed as if it was unambiguously expressed. If, taking the will as a whole in the light of the subjects with which it deals, its meaning is plain, there is no legitimate room for judicial construction, and none should be attempted."

We are unable to discover any uncertainty such as above suggested in the words in question. The learned counsel for appellant argue that, the testator having acquired his property by farming, it is not reasonable to suppose he intended to have the farm land, comprising a large part of his estate, converted into money and administered in that form, and in that view the words of apparent direction to that effect appear ambiguous. The reasoning seems to be illogical, in that important premises are omitted while the conclusion from those suggested does not necessarily follow. The testator's scheme plainly was, as before indicated, that the value of the use of the property, measured by the interest obtainable, should be paid to his two sons; that the corpus

should remain intact for, within reasonable probability, many years and then should be divided, within such probability, into many parts for the purpose of paying at the appointed times one part to each of the grandchildren entitled to share in the distribution. The ordinary, if not the necessary, way of carrying out such a scheme would be to convert the property into an invested interest-bearing fund. One would hardly think of tying up a farm property, which requires careful and constant management, for a long period of years for the purpose of providing a reliable income for two or more persons, and ultimately for a division of the property among a still larger number, the time for each of the latter to take in possession differing from all the others. The only way by which a reasonably certain income free from the burdensome cares and expenses of a trust could be secured would be to turn the property into an interest-bearing well-secured fund, and the only practicable way for the ultimate division would be to treat the property in the form of money. So the literal sense of the will is reinforced by its plain purpose rather than rendered obscure thereby.

It follows logically from the foregoing that the testator's intention was that the one appointed by the court to administer the estate should convert the same into money, put the available funds out at interest, and act as trustee in the complete execution of the will. The instrument expressly provides that the property "shall be put on interest by some one appointed by the county judge," etc. The appointee under that provision, in legal effect, is the appointee of the testator. *Wolbert v. Beard,* 128 Wis. 391, 397, 107 N. W. 663.

It is the opinion of the court that the decision respecting the disposition of the interest derived from the invested fund so long as either of the sons shall survive, is right, viz.: That it shall be equally divided annually between the two while they both live, and after the death of one that all shall be paid to the other so long as he shall survive. That would

seem to be the plain, ordinary meaning of the words "the interest . . . shall be paid annually to my sons *Bert* and John during their lives." But if it were otherwise, leaving a reasonable doubt on the question, looking at the words alone, that would disappear in the face of these significant circumstances: no express disposition of interest accruing on the fund was made except during the continuance of the trust for the two sons. There is no implied disposition of interest accruing during the existence of either of the life estates incidental to a disposition of principal, it being in effect provided that no part of the principal shall go to any one until the death of the sons. There is no provision, express or implied, for an accumulation of interest on any part of the fund for payment to the ultimate owners of any part of the principal. All those circumstances are consistent with the theory that the words "the interest . . . shall be paid annually to my sons . . . during their lives," mean that the entire interest shall be annually so paid to both sons while living, and thereafter to the survivor until the happening of the circumstance which will determine the ownership of the principal, and are hardly consistent with any other reasonable theory.

What has been said disposes of the question in the negative, in harmony with the decision of the trial court, of whether the testator intended that the title, absolute, to any part of the invested funds should vest in any grandchild prior to the termination of both life estates. The meaning of the words at this point, viz.: "After the death of my sons the principal shall go," etc., is regarded as unmistakable.

We now come to the only part of the will which in our opinion is ambiguous. Did the testator mean by the words, "After the death of my sons the principal shall go to their living children, at the age of twenty-one," that the corpus of the property upon the termination of the two life estates should go in right to their living grandchildren, share and

share alike; vest in them in a common-law sense in such shares, payable only as they severally arrive at the age of twenty-one; or did he mean that it should go to them as a class, each to take a share contingent upon his surviving to attain his majority? In other words, was there a gift to the grandchildren to take effect at the termination of the life estates, payment being postponed as to any one not being of age till the termination of his minority, or was it intended that the property should go to such of the grandchildren living at the time of the termination of the life estates as should attain their majority? If the intention was merely to fix the time of payment as to each of the takers in remainder, and not to annex the mere circumstance of future payment to the gift as a substantive matter, then the grandchildren living at the termination of the life estates will take, share and share alike, vested interests, in a strict common-law sense, in the invested fund. In case of the death of one of them thereafter before arriving at the age of twenty-one years the survivor will not take the share that would otherwise be paid to him but it will go to his personal representative.

The rule is often stated thus:

"When a future time for the payment of the legacy is defined by the will, the legacy will be vested or contingent according as, upon construing the will, it appears whether the testator meant to annex the time to the payment of the legacy, or to the gift of it." 2 Williams, Ex'rs (7th Am. ed.) 515.

Denio, C. J., in *Everitt v. Everitt*, 29 N. Y. 39, 75, phrased the rule thus:

"If *futurity* is annexed to the *substance* of the gift, the vesting is suspended; but if it appear to relate to the time of payment only, the legacy vests instanter."

See, also, *Scott v. West*, 63 Wis. 529, 24 N. W. 161, 25 N. W. 18; *Stark v. Conde*, 100 Wis. 633, 76 N. W. 600.

We do not have any difficulty here in determining whether the granchildren took vested interests upon the death of the testator because of the express declaration that the corpus of the property shall go to such children living at the time of the termination of the life estates. So no vesting by title, absolute, can occur prior to that time. The rule that, nothing appearing convincingly to the contrary, the presumption is that a bequest takes effect and vests absolutely in point of right at the death of the testator (*Scott v. West,* 63 Wis. 529, 24 N. W. 161, 25 N. W. 18), is displaced by the rule that a bequest in the form of a direction to divide between and distribute to specified persons vests in those *in esse* answering to the description at the appointed time for division and distribution. *Smith v. Smith,* 116 Wis. 570, 93 N. W. 452; *In re Moran's Will,* 118 Wis. 177, 96 N. W. 367. That and the further rule that nothing appearing convincingly to the contrary, where the bequest is not direct but rather in the form of a bequest to those of a particular description answering thereto at a specified time, and some other rules that might be mentioned, are all in harmony with the thought that no interest in the estate in question can vest in the grandchildren prior to the termination of the life estates.

It is very evident that the idea in the testator's mind, which he intended to embody in the last clause of the will, is very imperfectly stated. Nothing appears, expressly, as to disposing of interest after the termination of the life estates. That it was expected such interest would accumulate and wait upon the time of payment of principal is rather negatived by the express direction as to payment of the latter and silence as to the former. That it was not intended to leave the interest as intestate property is negatived by the obvious general scheme of the testator to dispose of all of the property. No construction can be rightly adopted that would leave the interest undisposed of, if one can reasonably

be read out of the instrument which will avoid that result. That is a very familiar principle. If it were not intended that the payment of the interest should wait upon a distribution of the principal and yet to dispose of it, then it must be that the purpose was that the interest should be paid annually after the termination of the life estates as before, to the persons entitled thereto, to wit: the grandchildren. In that case it would hardly be reasonable to suppose the purpose was that the interest should be paid to any one whose right to share in the disposition of the principal was contingent. Only a vested right to principal would reasonably carry interest. That is consistent with the rule that where a will provides for payment of interest on a fund to a legatee till a specified time and then for payment of the principal to him, the presumption is, nothing appearing convincingly to the contrary, that the purpose of the testator was that the right to the fund itself should vest in such person at the time of the vesting of the right to the use. In such circumstances, in case of the death of the beneficiary before the time for him to receive the principal, it goes to his personal representative. *Patton v. Ludington,* 103 Wis. 629, 646, 79 N. W. 1073; *Peterson's Appeal,* 88 Pa. St. 397; *Warner v. Durant,* 76 N. Y. 133; *Green v. Green,* 86 N. C. 546; *Reed's Appeal,* 118 Pa. St. 215, 11 Atl. 787. In the last case cited the rule is stated substantially thus:

"While it is true, as a general rule, that where the time or other condition is annexed to the substance of the gift and not merely to the payment the legacy is contingent, yet, as an exception, when interest, whether by way of maintenance or otherwise, is given while the enjoyment of the gift of the principal is postponed, the legacy will vest immediately."

In the light of the foregoing it is the opinion of the court that the testator's purpose was to bequeath the principal of the invested fund to the grandchildren living at the termi-

nation of the life estates, share and share alike, payment to them, as to principal, to be made upon their severally arriving at the age of twenty-one years, and, as to interest, annually for their use. That avoids intestacy as to the interest, and courts sometimes indulge in some very strong presumptions to that end. It satisfies the rule as to the vesting of the principal, there being nothing to efficiently displace the presumption in that regard, coinciding with the commencement of the right to the interest. The latter rule being satisfied, the condition as to payment is shown not to be affixed to the substance of the gift, but rather to the mere time of payment. That accomplishes an early vesting, comparatively speaking, and makes the most reasonable disposition of the estate in remainder that can be well read out of the testator's language.

The result is that the right to the estate in remainder will vest by title, absolute, in the grandchildren, share and share alike, at the time of the termination of the life estates. Each child will be entitled thereafter to the benefit, annually, of the interest upon his share until he realizes in possession as to the principal. In case of the death of any child after the period of vesting and before the time of payment his share will go to his personal representative instead of to the surviving grandchildren. The decision of the trial court, in effect, that the time of payment was affixed to the substance of the gift so that at the termination of the life estates the then surviving grandchildren will come into possession of mere contingent rights as to principal; that they will be mere joint tenants so that though having a vested interest, in a sense, such interest will be subject to be divested as to any one by his demise prior to his arrival at the age of twenty-one, must be reversed.

*By the Court.*—The judgment as to the character of the estates in remainder is reversed, and otherwise it is affirmed. The cause is remanded with directions to modify that part

of the judgment contained in clauses numbered six (6), seven (7), and eight (8), so it will decree that upon the death of both sons the principal will immediately vest in the then living grandchildren, share and share alike, as tenants in common; that in case of the death of any one of them thereafter before his arrival at the age of twenty-one years his share will go to his personal representative; that the share of each will be payable to him upon his arrival at the age of twenty-one, if he so survives, and that in the meantime the interest, so long as he lives, will be for his use according to law. Taxable costs in this court of appellant and respondent *J. B. Mauer* are directed to be paid out of the body of the estate. No costs will be taxed in favor of the infant respondent, *Edna Benner,* who appears by Geo. B. Clementson, as guardian *ad litem,* but the sum of $75 is allowed such guardian *ad litem* for his services and necessary expenditures in this court, payable out of the body of the estate. Ch. 267, Laws of 1907 (sec. 4041*b,* Stats.) No amount is allowed to the guardian *ad litem* of other infants at this time, because no claim has been presented in respect thereto with proof as to what would be reasonable.