ESTATE OF BRITT: ROCK COUNTY SAVINGS & TRUST COMPANY and others, Appellants, vs. BRITT and another, Respondents.

*October 24, 1946—January 24, 1947.*

For the appellants there was a brief by *McGowan & Geffs* of Janesville, attorneys for the Rock County Savings & Trust Company and Winifred Coon, executors, *Aberg, Bell, Blake & Conrad* of Madison, attorneys for Winifred Coon, personally, Lucy Tefft, and Gertrude Crandall, and *Willard P. McDermott* of Janesville, attorney and guardian *ad litem* for Mary Jane Seaman and Joan Seaman, and oral argument by *Mr. George S. Geffs, Mr. W. J. P. Aberg,* and *Mr. McDermott.*

For the respondent Helen Grace Britt there was a brief by *Dougherty, Grubb & Ryan* of Janesville, and oral argument by *W. H. Dougherty.*

FAIRCHILD, J.  By the trial court's decision the accounts receivable and the checking account in the Merchants & Savings Bank of Janesville, Wisconsin, at the time of the testator's death are decreed to be a part of the "coal business" which is to be operated by the trustees for ten years and then conveyed by them to the two sons.  The question thus raised is whether these items are to be included and considered as a part of the "coal business" which had been carried on during the lifetime of the testator under the name of "F. M. Britt Coal Company" or as a part of the general estate.

The term, "business," does not mean everything that a proprietor of a going concern may own at the time he disposes of it, even though it may be possible to trace some connection arising out of the operation of the business.  The question of

what is included when the term "business" is used has been a source of some litigation, and a great variety of meanings appear from the cases in which that term has been considered as well as in texts by writers who have given some attention to questions which may arise from the use of the term. The word "business" varies from mere good will to an inclusion of other and more substantial elements. It has never become fixed and definite enough to carry the same meaning in every instance. The cases reviewed leave it to the context of the instrument in which the term occurs or other circumstances indicating an intention as to what is to be included or excluded.

In examining a will to discover a purpose, it is well to proceed in the reading of it as if the language is unambiguous. *Benner v. Mauer* (1907), 133 Wis. 325, 330, 113 N. W. 663, 665. In that case and others following it the doctrine is expressed that if, taking the will as a whole in the light of the subjects with which it deals, its meaning is plain, there is no legitimate room for judicial construction. As was said in *Will of Stephens* (1931), 206 Wis. 16, 19, 238 N. W. 900, 902: "But we must look to the language of the whole will and read it in the light of the circumstances surrounding the testator, in order to discover what was apparently in his mind at the time he made it, and thus ascertain his intention."

Here the testator has created a trust. The trustees are charged with the duty of carrying on all his affairs. They take his place in the control of his estate subject to the direction contained in the will. They are to conduct the coal business as well as manage the rest of his estate, keeping the *net profit* from the operation of the coal business intact, as well as the net profit from the balance of the estate. By the trust arrangement he extends his business operation ten years. There are two sources of income to be considered, the coal business and all the other property, but these made up the estate treated with in the will. If money is used from the

"other property" accommodation must be made so that the net income of each section may be fairly ascertained. In other words, there must be a plan of accommodation between the two sections or funds followed in the discharge of administration of the trust, which will accommodate itself to the benefit of the "business" and the "other property" so that the net income of the business may be fairly ascertained. There is no room for a construction resulting in separating any cash or evidences of debt from the estate.

All his property, except his homestead "of whatever kind or nature, and wherever situated," he did "give, devise and bequeath to" the trustees for the certain uses and purposes set forth in the will.

A reading of the terms of the will with reference to the conduct of the coal business and the management of the balance of his estate by the trustees tells the obligation the testator has placed upon his trustees. He gives them his entire estate in trust and they are to transfer and assign his property in accordance with the terms of the will at the end of the ten-year period.

We do not deal further with the questions referred to in the briefs of counsel relating to the construction of the terms of the trust. It is well established that a court will not instruct a trustee as to questions which may never arise. Restatement, 2 Trusts, p. 806, sec. 259 (c). See also 2 Scott, Trusts, p. 1466, sec. 259, and cases cited; *Will of Grotenrath* (1934), 215 Wis. 381, 254 N. W. 631.

*By the Court.*—Judgment reversed. Cause remanded for further proceedings in accordance with this opinion.

The following opinion was filed February 17, 1947:

Wickhem, J. (*dissenting*). While the residuary clause of the will does set up a single trust and a single trustee, it is apparent to me from reading the clause that the testator intended two classes of property to be kept separate during the

period of the trust. The first is the business—whatever that may be held to constitute. The second is the property covered by paragraph (7) of the will. I come to this conclusion because the trust provisions require the trustees to keep the income of these two classes of property separate, and because there is ultimately a separate disposition of each class of property. While it is true that it is the business as it will have survived the risks of ten years' operation that is to be distributed under the terms of paragraph (6), it is also true that what constitutes the business at that time will to a considerable extent depend upon what the business comprises at the start of the period. If the trustees are to keep the portions of the estate separate, properly allocate the income and perform the other functions of their offices, it appears to me that they must know what constitutes the business at the outset of the trust. From all the facts and circumstances, I conclude that the bank account which the testator himself used as an instrument in his business is a part of his business, and that the other account involved belongs to the property disposed of under paragraph (7). The word "business" is not a word of art and I think should here be construed to include what the testator himself treated it as including, namely, the plant, accounts receivable, firm bank account, etc. Testator evidently considered that the business, as so defined, should thereafter be run upon its accumulated earnings, and that whatever remained at the end of ten years, be it large or small, be divided at the end of that period. The other property was to be kept separate and not to be used in aid of the business. Portions of its income were to be accumulated and disposition made as indicated in paragraph (7). It appears to me that any other construction puts it within the power of the trustees to control the ultimate devolution of the property by the manner in which they administer the estate. Finally, it appears to me that the construction which I adopt would render unnecessary any instructions to the trustees; that that adopted by

the majority of the court will almost necessarily result in a new proceeding or several of them by the trustees in order to solve administrative problems necessarily involved in the construction put upon the will by the court.

I am authorized to state that Mr. Justice FRITZ and Mr. Justice RECTOR join in this opinion.