ESTATE OF MONTGOMERY: MONTGÓMERY, Appellant, vs.
KJORSTAD, Executor, and others, Respondents.

*May 3—June 6, 1950.*

FAIRCHILD and BROWN, JJ., dissent.

For the appellant there was a brief by *Brindley & Brewer* and *James G. Robb,* all of Richland Center, and oral argument by *F. L. Brewer.*

For the respondents there was a brief by *Hill, Miller & Hill* of Baraboo, and oral argument by *James H. Hill, Jr.,* and *James H. Hill, Sr.*

BROADFOOT, J.   The sole question to be determined is the intention of the testator in using the phrase "all of the balance of my home farm." In other words, what did the testator have in mind when that phrase was used on the date of the execution of his will?

It is difficult to frame a definition of the word "home," as it has many implications. In its ordinary and usual sense the word "home" refers to the house in which one lives with his family, together with the land upon which it is located, and which is used in connection therewith. This usual meaning is not applicable in this instance as the testator was not living upon the property at the time he executed the will. The

word "home" is sometimes used to refer to the particular place in which one was born or reared. Testator was apparently born and reared on the farm of which the one hundred thirty-one acres was originally a part. There is no contention by anyone that the testator meant the one hundred thirty-one acres when he referred to the "home farm."

The trial court felt there was a latent ambiguity in the expression used and permitted the introduction of extrinsic evidence to help determine the intention of the testator. This evidence was oral and was to the effect that the testator often referred to the one hundred thirty-one acres as the "old place." There is also some evidence in the record that the eighty acres were referred to as the "Murray farm." There is no evidence in the record that the testator ever referred to anything as the "home farm." All of this evidence referred to statements made by the testator while he was residing upon his farm. In other words, all of the statements were made by him prior to the year 1929. The testimony is remote as to time and offers no aid in determining the intention of the testator in February, 1943.

Without the benefit of any reference by the testator to indicate what he meant by the "home farm" we must look to the manner in which he acted when dealing with the property. It is undisputed that he operated the entire two hundred eleven acres as one farm from 1918 to 1929, while he lived thereon. He rented it as one farm unit from 1929 until the time of his death. He owned but one farm. We are forced to conclude, therefore, that when he referred to the "home farm" in his will he meant the entire tract of two hundred eleven acres.

Attention has been called to the residuary clause, and it is contended that the testator meant by that clause to dispose of the one hundred thirty-one acres. He owned a home in Reedsburg in joint tenancy with his second wife, who might have died before the testator. In that event the home would

have been devised by the residuary clause, and it is good practice always to include such a clause in the event of a change in the property holdings and financial standing of the testator. The argument has weight, but is not controlling.

*By the Court.*—That part of the judgment appealed from is reversed and cause remanded with instructions to enter judgment in accordance with this opinion.

FAIRCHILD, J. (*dissenting*). In my·judgment, the opinion filed in this case does not give due consideration or significance to language used in the will. The words "home farm," as used, were intended to describe a piece of land on which the testator first established his home. Those words in association with the creation of the residuary clause seem to clearly disclose the intention of the testator. The evidence warranted the conclusion reached by the court below. The trial judge said in his memorandum: "In the year of 1901 L. E. Montgomery, then having arrived at majority and having a family of his own, purchased eighty acres adjoining the old farm of the father. This was known as the 'Murray Farm.' After purchasing this farm he moved upon it with his family and there they lived for many years." The evidence discloses that the eighty acres that he bought from Murray was the home where his children were born and naturally would be the piece of property in mind when the term "home place" or "home farm" or "old place" was used. The court's construction which eliminates the word "home" from "home farm" eliminates, also, two of the testator's daughters from any share in their father's estate. A construction which disinherits children who, as far as the record shows, were on good terms with the parent, ought to have a more substantial foundation than a presumption that the testator was careless in his choice or his approval of the words used in framing his bequests. A review of the testimony convinces me that the use in the will of the words "home farm" was meant to

describe the eighty acres of land on which the testator first lived. Giving the will that construction saves a complete meaning for the residuary clause. None of the many rules that have been devised to assist in the discovery of a testator's intent should be permitted to interfere with the manifest intention disclosed by the will, and no rule of construction is more effective to discover the testator's intention than that which requires that words shall be given their plain and ordinary meaning. *Benner v. Mauer,* 133 Wis. 325, 113 N. W. 663.

I am authorized to state that Mr. Justice BROWN joins in this dissent.